[L.A. No. 31267. Dec. 15, 1980.]

JOHNNY DEAN HUBBARD, Plaintiff and Appellant, v. ROBERT JAMES BOELT, Defendant and Respondent; CITY OF SAN DIEGO et al., Interveners and Appellants.

**COUNSEL**

Carlson & Thiessen and Robert T. Thiessen for Plaintiff and Appellant.

Yale I. Jones, William G. McDevitt, Robert E. Cartwright, Ian Herzog, Edward I. Pollock, Glen T. Bashore, Stephen I. Zetterberg, Ralph Drayton, Richard D. Bridgman, Harvey R. Levine, Leonard Sacks, Joseph Posner, Cotkin, Collins, Kolts & Franscell, George J. Franscell, Wayne W. Schmidt, Donald L. Clark, County Counsel (San

Diego), Lloyd M. Harmon, Jr., Chief Deputy County Counsel, and William A. Calders, Deputy County Counsel, as Amici Curiae on behalf of Plaintiff and Appellant.

John W. Witt, City Attorney, Ronald L. Johnson, Chief Deputy City Attorney, and Thomas F. Calverley, Deputy City Attorney, for Interveners and Appellants.

George Agnost, City Attorney (San Francisco), Burk E. Delventhal and Alice Suet Yee Barkley, Deputy City Attorneys, Burt Pines, City Attorney (Los Angeles), Edwin J. Moore, City Attorney (Santa Clara), Jerome F. Coleman, City Attorney (Burlingame), George W. Brehmer, City Attorney (Carmel-by-the-Sea), William J. Adams, City Attorney (Palm Springs), P. Lawrence Klose, City Attorney (Petaluma), Donald C. Wickham, City Attorney (San Jacinto), Gerald A. Sperry, City Attorney (Stockton), and Elwyn L. Johnson, City Attorney (Modesto), as Amici Curiae on behalf of Interveners and Appellants.

Wingert, Grebing, Anello & Chapin, Michael M. Anello, Lascher & Wilner and Edward L. Lascher for Defendant and Respondent.

## OPINION

**RICHARDSON, J.**—May a policeman injured during a high speed chase of a reckless traffic offender recover damages for his personal injury from that person? We conclude that such recovery is precluded by reason of the so-called "fireman's rule," which bars certain tort causes of action by firemen and policemen injured during the course of their hazardous occupations. (See *Walters* v. *Sloan* (1977) 20 Cal.3d 199, 202-207 [142 Cal.Rptr. 152, 571 P.2d 609].)

The facts are not disputed. On February 28, 1977, plaintiff Hubbard, an on-duty San Diego police officer, while parked at roadside, was operating speed detection equipment. Defendant Boelt's vehicle registered a speed of 50 miles per hour, violating the 25-mile-per hour speed limit. Plaintiff immediately activated his emergency lights and siren and began pursuit. Defendant accelerated to avoid arrest, at one point his vehicle reaching a speed of 100 miles per hour. While passing another car on a blind curve, defendant collided with a third vehicle, causing debris to be scattered over the roadway. Plaintiff approached the accident

scene at a high rate of speed and was injured when he attempted to avoid the highway debris by driving his car upon a grass embankment. The entire chase occurred within a half mile in distance and less than one minute in time.

Plaintiff sued defendant, alleging that defendant's negligent and reckless operation of his motor vehicle proximately caused plaintiff's injuries. The City of San Diego intervened, supporting plaintiff's action and asserting a separate claim against defendant for reimbursement of workers' compensation and disability benefits (a claim not involved in the present appeal). The trial court dismissed plaintiff's action after granting defendant's motion for summary judgment based upon the fireman's rule. This appeal followed.

As we recently stated, "The fireman's rule provides that negligence in causing a fire furnishes no basis for liability to a professional fireman injured fighting the fire." (*Walters* v. *Sloan, supra*, at p. 202.) The rule, which has been held equally applicable to policemen injured in the course of their duties, is based on the principle that it is the business of a fireman or policeman to deal with particular hazards, and that accordingly "'he cannot complain of negligence in the creation of the very occasion for his engagement.'" (*Giorgi* v. *Pacific Gas & Elec. Co.* (1968) 266 Cal.App.2d 355, 359 [72 Cal.Rptr. 119]; see *Walters* at p. 202; *Solgaard* v. *Guy F. Atkinson Co.* (1971) 6 Cal.3d 361, 369 [99 Cal.Rptr. 29, 491 P.2d 821].) In *Walters*, we reiterated and confirmed the rationale underlying the fireman's rule, observing that it is based upon (1) the traditional principle that "one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby," (p. 204), and (2) a public policy to preclude tort recovery by firemen or policemen who are presumably adequately compensated (in special salary, retirement, and disability benefits) for undertaking their hazardous work (pp. 204-206).

Plaintiff first argues that the fireman's rule should be inapplicable to reckless conduct of the type herein alleged. Yet the foregoing principles and policy considerations seemingly would apply whether defendant's conduct was reckless or merely negligent in nature: In both situations, the plaintiff voluntarily confronts a hazard for which he is specifically compensated. Moreover, it would be anomalous if recovery for injuries to firemen or policemen incurred in facing substantially identical risks were to depend solely upon the nature of defendant's conduct in creating that risk.

Until recently, the courts had left open the question whether recovery might be permitted for reckless or wanton misconduct. (See *Walters*, at p. 202, fn. 2; *Giorgi*, at p. 360.) Then, in *Holden* v. *Chunestudey* (1980) 101 Cal.App.3d 959 [161 Cal.Rptr. 925], the court extended application of the fireman's rule to bar recovery for injuries resulting from a defendant's wilful or wanton misconduct. In *Holden*, a patrolman was summoned to the scene of a fatal accident apparently caused by defendant's driving while intoxicated; the officer slipped and fell while climbing a hill near the accident scene. Although plaintiff argued that defendant's aggravated conduct justified an exception to the fireman's rule, the court rejected the contention reciting several reasons for doing so: "The policy justifications for the fireman's rule in negligence cases set forth in *Walters* require application of the rule to willful or wanton misconduct. [¶] Firemen and policemen fall within fundamental tort principles which prevent a person from recovering for injury due to a knowingly and voluntarily encountered hazard. [Citation.] This rationale applies to willful or wanton misconduct as well as to negligence. [¶] Second, police officers...may not complain of willful or wanton misconduct for they are employed to deal with behavior made the subject of their duties, whether it arises as a result of someone's careful behavior, negligence, or willful or wanton misconduct. [¶] Third, firemen and policemen receive special benefits and pay because of the dangers they encounter. [Citation.] The added compensation is not limited to injury from negligent conduct. [¶] Last, *Walters* expressed concern that abolishing the fireman's rule would burden the courts with litigation. That concern would not be much mitigated by limiting the rule to negligence cases both because of the potential number of wanton or willful cases and because we can anticipate litigation plumbing the line between negligence and willful or wanton misconduct." (Pp. 961-962.)

For all the reasons described in *Holden*, we conclude that the fireman's rule extends to both negligent and reckless conduct. We are not concerned with a claim for intentionally inflicted injuries to firemen or policemen.

█ Plaintiff next contends that the fireman's rule is inapplicable because defendant allegedly violated various statutory provisions which were designed to protect persons in plaintiff's class. A similar argument was made and rejected, however, in *Walters* wherein we made the following observation: "Ordinarily, a criminal statute is enacted not to

protect policemen from injury while investigating or terminating the prohibited conduct but rather to protect the public. Enforcement of any criminal statute causes policemen to confront persons violating the statute, thereby imposing a confrontation and risk to the officer where none existed before. An officer called to enforce a criminal statute is thus not one of the class of persons for whose protection the criminal statute is adopted." (20 Cal.3d at p. 207.)

Similarly, singly or in combination, none of the statutory provisions relied upon by plaintiff herein appears specially designed to protect policemen from traffic accidents of the kind in which plaintiff was injured. Vehicle Code section 2800.1 makes it a misdemeanor wilfully to disregard an officer's siren and red light and to flee or attempt to elude pursuit. Penal Code section 148 proscribes wilful resistance, delay or obstruction of a police officer. Penal Code section 834a forbids using force or a weapon to resist arrest. The first section clearly was designed for the protection of the general public, to reduce the general traffic hazard resulting from pursuit at high speeds. The resistance/obstruction and force/weapon statutes may have been enacted to assist the officer in making arrests and performing other official functions but it is unlikely that these provisions were intended to protect the officer from injuries received from traffic accidents. Thus, we cannot conclude that enforcement of the fireman's rule in the present case would be contrary to any public policy expressed in the statutory provisions cited by plaintiff.

■ Finally, plaintiff contends that the fireman's rule should not apply to the present case, because his injuries were not caused by defendant's original act of speeding, but by his subsequent act of accelerating to avoid capture, thus resisting arrest at high speeds. Plaintiff asserts that the fireman's rule was not intended to bar recovery for independent acts of misconduct which were not the cause of the plaintiff's presence at the accident scene. (See, e.g., *Kocan v. Garino* (1980) 107 Cal.App.3d 291, 295-296 [165 Cal.Rptr. 712].) We have confirmed the validity of this principle in the abstract. As stated in *Walters, supra,* "Thus a police officer who while placing a ticket on an illegally parked car is struck by a speeding vehicle may maintain action against the speeder but the rule bars recovery against the owner of the parked car for negligent parking." (20 Cal.3d at p. 202, fn. 2.) In the present case, however, no such independent act occurred. Plaintiff was injured while pursuing a speeding traffic violator, and in discharge of his official duty

incurred the very risk which occasioned his presence at the accident scene.

The judgment is affirmed.

Mosk, J., Clark, J., Manuel, J., and Newman, J., concurred.

**TOBRINER, J.**—I dissented from this court's decision in *Walters* v. *Sloan* (1977) 20 Cal.3d 199 [142 Cal.Rptr. 152, 571 P.2d 609] and I continue to believe that the "fireman's rule" is inconsistent with California's fundamental statutory and common law tort principles which require all persons to exercise due care to avoid injury to others. (See, e.g., Civ. Code, § 1714; *Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 46 [123 Cal.Rptr 468, 539 P.2d 36].) Consequently, I would vote to overrule *Walters* and to abrogate the fireman's rule altogether.

Even accepting *Walters* as the governing authority, however, the majority's decision in the present case is totally unwarranted. Whereas *Walters* simply adopted the traditional, limited fireman's rule that could at least claim the support of an established line of decisions from a variety of jurisdictions, in the case at bar the majority have not applied the traditional fireman's rule at all but rather have extended the reach of the rule beyond the limits of any previous authority. In so doing, the majority have transformed the fireman's rule from a restrained doctrine that simply protects the average homeowner or citizen from potentially severe liability for mere acts of negligence in creating a situation as to which firemen and policemen are employed to respond, into a sweeping, across-the-board rule that forbids firemen and policemen from recovering any damages from persons who, with knowledge of a safety officer's presence on the scene, intentionally engage in wilful and wanton misconduct which results in serious injury to the officer. With all respect, I am astonished that the majority find such a result mandated by considerations of sound public policy.

If the fireman's rule were applied in this case in its traditional form, the police officer's lawsuit against defendant would be permitted to proceed on at least three separate grounds. First, as this court clearly recognized in *Walters*, the fireman's rule provides only "that negligence *in causing a fire* furnishes no basis for liability to a professional fireman injured fighting the fire." (Italics added.) (20 Cal.3d at p. 202.) Thus, under the rule firemen, and by analogy policemen, ""cannot complain

of negligence *in the creation of the very occasion for [their] engagement.*"" (Italics added.) (*Id.*)

If the police officer in the present case had suffered injury in the normal course of stopping the defendant for negligent speeding, I would agree that this action would fall under the traditional fireman's rule because in that event the defendant's negligence would have caused the officer's injury only in the sense that it "created the occasion" for the officer's presence at the location of the accident. In the case at bar, however, after the defendant became aware of the police officer's presence on the scene, the defendant committed *an additional and subsequent act of misconduct* which foreseeably created a new and additional risk of danger to the officer and which ultimately caused the officer's serious injuries.

Past cases applying the fireman's rule make it clear that while a defendant may be shielded from liability for negligent acts committed prior to the fireman's or policeman's presence which cause or fail to prevent the fire or crime, the rule provides no shelter for a defendant who, after the officer arrives, commits subsequent negligent acts which cause the officer's injury. Thus, for example, although a landowner incurs no liability simply for negligently starting a fire, such a defendant has generally been held liable if, after a fireman arrives, the owner negligently fails to advise the fireman of some special danger on the property which ultimately causes the officer's injury. (See, e.g., *Bartholomew* v. *Klingler Co.* (1975) 53 Cal.App.3d 975 [126 Cal.Rptr. 191]; *Shypulski* v. *Waldorf Paper Products Co.* (1951) 232 Minn. 394 [45 N. W.2d 549]; see generally Note (1966) 19 Vand.L.Rev. 407, 410-411.) Similarly, even in its early stages, the fireman's rule was generally held no bar to recovery by a fireman or policeman who, after arriving on defendant's property, was injured by the negligent operations of a railroad train or other "active instrumentality" under the defendant's control. (See generally Annot. (1921) 13 A.L.R. 649, 649-650; Annot. (1962) 86 A.L.R.2d 1205, 1225-1226.) In short, the fireman's rule has never been viewed as totally eliminating an individual's duty to utilize due care towards a fireman or policeman once the officer has already arrived on the scene. The majority simply ignore this aspect of the fireman's rule in relieving the defendant of any liability for his actions in this case.

Second, the majority's conclusion is all the more indefensible because here the defendant's subsequent misconduct was not simply a negligent

lapse that inadvertently led to the officer's injury, but rather involved an intentional act of wilful and wanton misconduct that the defendant must have known posed a high degree of risk both for the officer and for other innocent members of the public as well. As the majority acknowledge, after discovering the police officer's presence, the defendant began a new course of misconduct in an attempt to evade arrest, accelerating to approximately 100 miles per hour and ultimately colliding with a third vehicle. Under past California cases there can be no question, of course, but that defendant's actions constituted "wilful and wanton misconduct" of the gravest nature. (See cases collected and summarized in 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 734, pp. 3025-3027.)

Although the majority suggest that "[u]ntil recently, the courts had left open the question whether recovery might be permitted [under the fireman's rule] for reckless or wanton misconduct" (p. 485, *ante*), in making this statement the majority have confused two entirely distinct situations. In the cases cited by the majority, unlike the instant case, the question adverted to was whether the fireman's rule would bar recovery when the original cause of a fire, or the initial presence of a police officer at the scene of a crime or accident, was attributable to an act of reckless or wanton conduct, rather than an act of simple negligence.[1] By contrast, past cases have by no means "left open" the question presented by the facts of this case—whether a defendant who engages in wilful and wanton misconduct after a fireman or police offi-

---

[1] The recent Court of Appeal decision in *Holden v. Chunestudey* (1980) 101 Cal. App.3d 959 [161 Cal.Rptr. 925], the sole authority upon which the majority rely, clearly demonstrates this point. In *Holden*, a police officer was injured when he climbed down a hill while investigating an accident that occurred when defendant's truck left the freeway and hit a tree. The officer, while recognizing that the driver's misconduct had caused his injury only in the sense that the misconduct had created the occasion for his presence at the scene, attempted to avoid the bar of the fireman's rule by asserting that the accident had been caused by the driver's wanton and wilful misconduct (driving while intoxicated) rather than by simple negligence. The *Holden* court, perhaps influenced by the fact that the allegedly wanton conduct in that case had as a practical matter created no greater risk to the officer than would have been posed if the accident had resulted from simple negligence, found the officer's action barred by the fireman's rule.

As the factual setting of *Holden* indicates, that action, unlike the instant case, did not involve a situation in which a defendant engaged in wilful and wanton misconduct *after* the police officer had arrived on the scene and did not present a situation in which the defendant's aggravated misconduct created a much greater risk of harm to the officer than would have been presented by simple negligence. Under these circumstances, the majority's total reliance on *Holden* is clearly misplaced.

cer is present on the scene of a fire or crime is protected by the fireman's rule. As a leading treatise notes, the prevailing authorities establish quite clearly that once a fireman or officer is present a defendant "must, of course, refrain from intentionally or wantonly injuring such officers" (2 Harper & James, Law of Torts (1956) § 27.14, p. 1504); indeed, in a footnote to this passage, Professors Harper and James declare that "[*t*]*his* [*rule*]...*is conceded by even the most reactionary decisions.* [Citations.]" (*Id.*, at p. 1504, fn. 38.) Thus, if the present majority opinion is permitted to stand, our court will have earned the dubious distinction of having rendered the most reactionary, and most ill-conceived, decision in this entire field.

Finally, the fireman's rule should not bar the police officer's recovery in this case for a further reason. In *Walters*, the majority recognized that the fireman's rule does not preclude recovery when the defendant has violated a statute and the officer "'suffering...the injury...was one of the class of persons for whose protection the statute...was adopted.'" (20 Cal.3d at pp. 206-207, quoting Evid. Code, § 669, subd. (a)(4).) In the instant case, unlike *Walters*, the statutes which the defendant has violated are not ordinary criminal statutes that have no special connection to the safety of a police officer; rather, the various statutes involved here are concerned specifically with ensuring that a person facing arrest does not commit additional acts which may pose increased risks both to the police officer and to the general public. Although the majority, without any citation of authority whatsoever, state that "it is unlikely that these provisions were intended to protect the officer from injuries received from traffic accidents" (p. 486, *ante*), in my view the statutes requiring an automobile driver to immediately respond to an officer's warning light were in all likelihood enacted for just such a purpose. I can discern no justification for interpreting these statutory provisions in a narrow unrealistic fashion so as to deprive police officers of the protection the statutes afford.

Although the majority's rejection of the police officer's claim for damages on the present facts is both legally indefensible and totally inequitable in itself, perhaps the most disturbing aspect of the majority opinion lies in its overly broad rendition of the policies ostensibly underlying the fireman's rule. The majority state in this regard that the fireman's rule "is based upon (1) the traditional principle that 'one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby,'...and (2) a public policy to preclude tort

recovery by firemen or policemen who are presumably adequately compensated (in special salary, retirement and disability benefits) for undertaking their hazardous work." (P. 484, *ante.*) Consistent application of these two "policies," however, would convert the fireman's rule into a broad doctrine that would bar both policemen and firemen from recovering from third parties for virtually all injuries inflicted upon them in the course of their employment.

Thus, for example, although in *Walters* itself the majority clearly recognized that a policeman who is hit by a negligent driver while ticketing an improperly parked car is not barred by the fireman's rule from suing the negligent driver (see 20 Cal.3d at p. 202, fn. 2), application of the broad policies enunciated by the majority in the present case would suggest that recovery should be denied under these circumstances, since the risk of such an injury is a foreseeable hazard of the officer's employment and the special benefits of his employment would generally encompass such an injury. Similarly, although the majority formally withhold any decision on whether a police officer can recover from a criminal for damages sustained when the criminal intentionally injures the officer (see p. 485, *ante*), if the majority confine their analysis—as they have done in this case—to the two broad policies which they equate with the fireman's rule, recovery should logically be denied for even such intentionally inflicted injuries, since the potential for such violent confrontation is again a foreseeable risk of a police officer's job and the officer's compensation and disability benefits at least theoretically reflect such potential danger.

As these examples illustrate, the majority's policy formulation in this case has fundamentally altered the limited nature of the traditional fireman's rule, converting the rule into a broad doctrine prohibiting firemen and police officers—but no other employees—from recovering for injuries which they suffer at the hands of third persons in the course of their employment. This reasoning is not only inconsistent with the traditional limits of the fireman's rule, but in addition squarely conflicts with the principles of Labor Code section 3852, which provides that "[t]he claim of an employee for [worker's] compensation does not affect his claim or right of action for all damages proximately resulting from such injury or death *against any person other than the employer.*" (Italics added.) (See, e.g., *Baugh* v. *Rogers* (1944) 24 Cal.2d 200, 214 [181 P.2d 387]; *Witt* v. *Jackson* (1961) 57 Cal.2d 57, 69 [17 Cal.Rptr. 369, 366 P.2d 641]; cf. *Walters* v. *Sloan, supra,* 20 Cal.3d 199, 203, fn. 3.)

The basic flaw in the majority's "public policy" approach is simply that the majority have failed accurately to identify the actual "public policy" basis on which the traditional fireman's rule rests. In *Walters*, the majority quoted with approval the explanation for the fireman's rule articulated by former Chief Justice Weintraub of the New Jersey Supreme Court in *Krauth* v. *Geller* (1960) 31 N.J. 270 [157 A.2d 129]. Chief Justice Weintraub stated: "Probably most fires are attributable to negligence, and in the final analysis the policy decision is that it would be too burdensome to charge all who carelessly cause or fail to prevent fires with the injuries suffered by the expert retained with public funds to deal with those inevitable, although negligently created, occurrences." (157 A.2d at p. 131.)

As this passage reveals, the policy basis for the traditional fireman's rule rests on the notion that ordinary tax-paying members of the public hire firemen and police officers at least in part to deal with future dangers that may in the normal course of events result from the taxpayer's own negligence, and that—by analogy to insurance, for example—it is unfair and unduly burdensome subsequently to require an unfortunate, if negligent, individual taxpayer to pay again for injuries sustained when such negligence in fact occurs. (See 2 Harper & James, The Law of Torts (1956) § 27.14, pp. 1503-1504.) Although, as I explained in my dissent in *Walters*, I think that even this limited policy rationale is insufficient to justify the fireman's rule, such a rationale does at least have the virtue of confining the diminution of the rights of firemen and policemen within somewhat tolerable limits and of relieving only the least culpable of tortfeasors from liability for the officers' injuries.

The majority's approach in the instant case, by contrast, unhinges the fireman's rule from its traditional modest public policy rationale. The majority expands the doctrine into a broad barrier to recovery by injured police officers and firefighters, relieving persons who know of a firefighter's or police officer's presence of any duty to act with concern for the officer's safety or, indeed, of any duty even to avoid reckless, wilful or wanton misconduct which poses an obvious danger to the officer. As we have seen, the traditional fireman's rule in no way supports the majority's decision absolving defendant of any financial responsibility for the serious injuries incurred by the police officer as a direct result of defendant's unlawful and wanton misconduct in attempting to evade arrest.

I would reverse the judgment in favor of defendant.

Bird, C. J., concurred.