[No. B072023. Second Dist., Div. One. June 13, 1994.]

PATRICK M. KELHI, Plaintiff and Appellant, v.
JAMES FITZPATRICK et al., Defendants and Respondents;
CALIFORNIA HIGHWAY PATROL, Intervener and Appellant.

1150

## COUNSEL

Jill Suzanne Breslau and Francis A. Sparagna for Plaintiff and Appellant.

Krimen, Bjornsen & Klein and Steven Helfend for Intervener and Appellant.

Kinkle, Rodiger & Spriggs, Paul B. Reynolds, L. Steven Hattendorf, Gerard C. Mogab, Breidenbach, Swainston & Way, Breidenbach, Swainston, Crispo & Way, Gregory D. Bistline, Ted H. Luymes, McGee, Willis & Greene, McGee, Lafayette, Willis & Greene, Robert Lipscomb and Sarah J. Goldberg for Defendants and Respondents.

## OPINION

**ORTEGA, J.**—This appeal involves the "firefighter's rule" (*Seibert Security Services, Inc.* v. *Superior Court* (1993) 18 Cal.App.4th 394 [22 Cal.Rptr.2d 514]) and the doctrine of primary assumption of the risk (*Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696]). We conclude the trial court properly entered summary judgment for defendants under both doctrines. A highway patrol traffic officer driving on a state freeway on his official motorcycle is on duty even though he is on his way to work. When two tires suddenly break off of a truck in front of the officer, who immediately responds by braking to create a traffic break to protect the motorists behind him and then by directing the defective vehicle to the side of the road, the officer may not recover in tort for personal injuries sustained as a result of being hit by the runaway tires. We affirm the summary judgment.

## Background

The accident occurred on May 10, 1988, about 2 p.m. Officer Patrick M. Kelhi, a uniformed highway patrol traffic officer, was riding his official motorcycle to work. As he travelled westbound in the No. 2 lane on State Route 60 (the Pomona Freeway), Officer Kelhi saw a pickup truck several hundred feet ahead in the No. 3 lane. Suddenly, the pickup truck's dual right rear tires broke off and began rolling westbound in the No. 4 lane to the right of the truck. The pickup truck's right rear axle frame bed area scraped along the ground.

Officer Kelhi, who was on duty, immediately braked, turned on his four-way amber hazard flashers, and began checking traffic behind him for unaware motorists. In his own words, he "creat[ed] an instant traffic break behind [him] so that no cars or trucks would run into the tires as they were running down the freeway." As Officer Kelhi slowed, "the truck was slowing, braking in the No. 3 lane. The tires were just rolling along in the No. 4 lane. I was to the left rear by about maybe 100 to 150 feet and everybody was slowing down. There were no cars or trucks attempting to pass" Officer Kelhi or the pickup truck.

Because it appeared the pickup truck was going to stop in the No. 3 lane, Officer Kelhi pulled beside the driver and spoke and gestured to him to move over to the right shoulder. As the driver complied by pulling to the right, Officer Kelhi slowed and moved to the rear of the pickup truck, one lane to the left, and looked for the runaway tires.

When Officer Kelhi spotted the tires, which had been rolling westbound in the No. 4 lane in a straight path, they suddenly veered to the right shoulder, bounced off the right retaining wall and became airborne 15 to 20 feet above the westbound lanes. Unfortunately, the tires landed on the bed of the pickup truck and bounced back in Officer Kelhi's direction. Officer Kelhi braked as hard as he could, but the tires landed on his motorcycle's windscreen and then hit him on the arm and leg, knocking him to the ground and the motorcycle out from under him. Officer Kelhi sustained physical injuries.

## This Complaint and Summary Judgment Motion

On May 3, 1989, Officer Kelhi filed a personal injury complaint alleging three causes of action. The first cause of action alleged negligence in the operation of a motor vehicle against the driver and owner of the pickup truck, James Fitzpatrick and Timothy S. Fitzpatrick, respectively, and Does 1 to 10.

The second cause of action alleged the tires had broken off the pickup truck due to negligent ownership, control, management, repair, inspection, maintenance, alteration and modification of the pickup truck, which was not factory equipped with dual rear tires. The defendants named in the second cause of action were the Fitzpatricks, Archer Automotive, Ford Motor Company, and Does 1 to 15.

The third cause of action alleged strict products liability and negligence claims, based on the dangerous and improper modification of the pickup truck, against Archer Automotive, Ford Motor Company, and Does 8 to 20.

By subsequent amendments, Officer Kelhi substituted Ted Jones Ford, Inc., in place of Doe 8, and U.S. Coachworks, Inc., in place of Doe 10.

On August 11, 1989, Officer Kelhi's employer, the State of California, Department of California Highway Patrol, filed a complaint in intervention seeking indemnification for all workers' compensation and other related benefits paid to Officer Kelhi as a result of his injuries.

On July 1, 1992, Ford moved for summary judgment or, alternatively, summary adjudication of issues.[1] In relevant part, Ford contended it owed no duty of care to Officer Kelhi as a matter of law.

In support of the motion, Ford submitted excerpts from Officer Kelhi's deposition which described the accident in the same general terms we related above. In particular, Ford pointed to Officer Kelhi's testimony that he was on duty at the time of the incident, and had tried to follow correct safety procedures to the extent possible in responding to the unpredictable truck and tires:

"Q.   Just getting back to the accident, the accident itself, everything that happened there, in your opinion did you follow the correct procedures that the CHP prescribes from the time you saw the wheel separate up until the time that the tires are bouncing back to you?

"A.   My initial response to you is there's no exact procedure for some-thing like that, whenever that happens to you. I would like to think that I followed good safety practices by trying to clear the road, positioning myself to the left rear of the vehicle, monitoring almost at all times the location of

---

[1]With the exception of the Fitzpatricks, all other defendants filed timely joinders in Ford's summary judgment motion. It was not until oral argument on the summary judgment motion that the Fitzpatricks, with Officer Kelhi's consent, belatedly sought and were permitted to join in the motion.

the tires being that they are unpredictable, and I'd like to say that I thought I was doing everything right.

"Q.  I wouldn't imagine there would be an entry in the manual when the dual tires separate, this is what you do. But insofar as you know, are there general procedures applicable to situations in some way like this that you were following them?

"A.  Yes, sir."

Officer Kelhi further testified that he would have been remiss in his duties if he had ignored the incident:

"Q.  By Mr. Lipscomb: You would have been remiss if you had ignored it?

"A.  [By Officer Kelhi:] Yes, sir.

"Q.  I'm not saying you would have been remiss if you had been 20 feet closer or 20 feet farther back or something like that. But when you see something like this, you're supposed to take some sort of enforcement action, try to get the guy off to the side of the road, and that's what you were doing on this occasion?

"A.  Yes, sir."

Ford also referred to Officer Kelhi's testimony that standard operating procedure upon observing a violation or defective vehicle is to order the motorist to pull over to the side of the road. As related by Officer Kelhi, "[t]he initial step would be to place the patrol vehicle directly behind the violator's vehicle, and at which time you observe the amount of traffic that the vehicle has to cross in order to get to the right shoulder, which would be required of the driver taking into consideration any on or off ramps that might create a hazard, not only to yourself but the other motoring customer[s]. [¶] You obtain a proper space cushion, activating your enforcement red light and/or siren as needed, and then try to lead the violator to a safe place to stop."

Officer Kelhi further testified the entire incident, from the time he first saw the tires break off the truck to the time he was hit by the tires, occurred within 10 to 15 seconds or "[m]aybe a little bit more."

In opposition to the summary judgment motion,[2] Officer Kelhi submitted his declaration dated July 26, 1992. In relevant part, the declaration stated that the amber four-way flashers on Officer Kelhi's motorcycle were turn signals. Officer Kelhi stated he did not use the red enforcement lights that flash only in the front of the motorcycle because he was not making an enforcement stop. "The actual correct procedure in making an enforcement stop, as described [in] my deposition, is to activate the enforcement light, drive directly behind the violator in the same lane, slightly to his *right* and then lead him over to the shoulder with the patrol vehicle moving to the nearest right lane first, and essentially clearing a path. I did not do this for fear of coming close to the vehicle and/or the tires, which had not stabilized. To that extent, what I did do (as described [in] my deposition) did not follow the procedures or guidelines."

Officer Kelhi further explained that when he signalled the driver to pull over, his forward momentum and the truck's slowing and scraping brought him up to the driver's side of the truck "within a couple of seconds without trying[.]" After motioning and yelling to the driver to pull over, Officer Kelhi "braked harder in order to stay in my lane and be behind the truck, about 50' to 100', so that I could avoid running into or over anything else that might come off the truck which I was afraid of, and to be able to keep the tires (of which I was also fearful) in sight and avoid any encounter with them. Both the truck and tires were 'wild cards.' I had no idea what else could go wrong with either."

Officer Kelhi also stated that the entire incident occurred within "[t]en (10) seconds . . . tops—it all happened extremely quickly." "I couldn't stay next to the truck or go ahead of it and take a chance that the truck and/or tires would go out of control from behind me without my knowing it and hit me; I certainly could not and would not move right, that would be close to the tires. [¶] I simply did not have anywhere to go or anytime to go there in, I tried to pick a safe place to be, as I said in my deposition, and it wasn't."

In reply, Ford asserted Officer Kelhi's declaration contradicted his deposition testimony on several points. To the extent the declaration and deposition testimony were inconsistent, Ford urged the trial court to rely on the

---

[2]Much of Officer Kelhi's opposition concerned evidence about the allegedly improper modification of the pickup truck. Apparently, when Fitzpatrick purchased the pickup truck new, it was already modified with dual rear tires. The modification presumably placed an excessive load on the axle bearing, causing it to break. The same or both axles had been repaired twice in August 1987 and April 1988, and the right rear tire assembly had been replaced four days before the accident. Ford replied below that the evidence of modification was irrelevant to the summary judgment motion. We agree and will not elaborate further on this point.

deposition testimony rather than on the subsequent declaration, citing *Nunez v. R'Bibo* (1989) 211 Cal.App.3d 559, 563 [260 Cal.Rptr. 1] ("Not all forms of evidence in connection with a summary judgment motion are of equal weight. When a defendant can establish a part of his defense with the admissions offered by plaintiff, the admissions are considered so valuable that contradictory affidavits may be disregarded. [Citation.] The trial court implicitly favored Daniel's deposition over his declaration, and we find no abuse of discretion in doing so.").

Ford further argued in its reply brief below: "[I]n his deposition, at which time plaintiff was perhaps not aware of the applicability of the Firefighter's Rule to this case, plaintiff's testimony explicitly showed that he *acted*, as a CHP officer should, to neutralize a dangerous situation. Now, however, cognizant of the effect the Firefighter's Rule may have on his case, plaintiff is at pains, in his Declaration filed with the Opposition, to show that he was *acted upon*. . . . This is simply not credible."

The trial court granted the summary judgment motion and entered summary judgment for defendants on September 17, 1992. In its order granting the motion, the trial court gave the following reasons in support of its ruling: "[Officer] Kelhi, was on duty as a . . . CHP[] officer at the time of the accident, that gave rise to the instant action [record citation]; [Officer Kelhi] was in uniform and riding a CHP motorcycle at the time of the accident []; the accident occurred on the westbound Pomona Freeway on May 10, 1988 and involved a Ford Ranger pickup truck []; [Officer Kelhi] was about 150 feet behind the Ranger when he observed the right rear dual tires on the Ranger break off and begin rolling free down the highway []; [Officer Kelhi] responded immediately by creating an instant traffic break, pulling close to the Ranger and ordering the driver off the road, and then dropping back behind the Ranger []; the tires then bounced off a retaining wall on the right side of the freeway, hit the rear of the Ranger, and then bounced into [Officer Kelhi]'s motorcycle, injuring him []; the entire incident took 15 seconds, or perhaps more []; [Officer Kelhi] was not struck by any other vehicle []; [Officer Kelhi]'s duties as a CHP officer required him to respond to the accident []; and [Officer Kelhi] did respond to the accident and believes he followed correct CHP procedures in so doing []."

Officer Kelhi appealed from the summary judgment.[3]

---

[3]With the exception of the Fitzpatricks, all defendants have appeared as respondents in this appeal.

Plaintiff in intervention, the State of California, Department of California Highway Patrol, has filed a joinder in Officer Kelhi's appellate brief. Accordingly, plaintiff in intervention is similarly situated with Officer Kelhi in this appeal.

ISSUES

Officer Kelhi contends (I) a jury must decide whether his presence at the accident scene was fortuitous and unrelated to the negligence which caused his injury. He further contends (II) the defense of reasonable implied assumption of the risk was erroneously applied to these facts as a matter of law.[4]

DISCUSSION

I

Officer Kelhi contends the firefighter's rule does not apply as a matter of law because a triable issue of fact exists as to whether his presence at the accident scene was unrelated to the hazard which injured him.

The history and limitations of the firefighter's rule in California are set forth in detail in *Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 367-370 [182 Cal.Rptr. 629, 644 P.2d 822]. Briefly stated, in California the firefighter's rule prohibits a peace officer from recovering for injuries caused by the very negligence "which created the risk which necessitated his presence." (*Id.* at p. 369, fn. omitted.) But the firefighter's rule does not bar an officer's recovery for injuries caused by tortious conduct other than that which necessitated his presence. (*Ibid.*) By statute, the firefighter's rule does not bar recovery where the injury was caused by "willful acts," or lack of "ordinary care or skill in the management of the person's property or person" where "the conduct causing the injury occurs after the person knows or should have known" of the officer's presence. (Civ. Code, § 1714.9, subd. (a)(1).)

In this case, there are no allegations of willful acts. The only defendant present at the scene of the injury was the driver, James Fitzpatrick, and nothing in the record indicates he did anything to injure Officer Kelhi after he knew or should have known of Officer Kelhi's presence. We distinguish *Malo* v. *Willis* (1981) 126 Cal.App.3d 543 [178 Cal.Rptr. 774], where a highway patrol officer was injured after pulling over two speeding motorists. One of the detained motorists ran his car into the officer's car while attempting to pull over. The collision occurred because the driver, unfamiliar with the car's manual transmission, mistook the clutch for the

---

[4]The summary judgment motion was briefed prior to the August 24, 1992, decision in *Knight* v. *Jewett, supra,* 3 Cal.4th 296, in which the plurality opinion of three justices, with Justice Mosk concurring and dissenting, adopted the terms "primary" and "secondary" assumption of the risk in place of "reasonable" and "unreasonable" implied assumption of the risk. (*Id.* at pp. 303-315.)

brake pedal. Under both decisional law and Civil Code section 1714.9, the officer would not be barred from suing the negligent motorist because the officer's injury was caused by conduct independent of the conduct that had precipitated the traffic stop. (See also *Spargur* v. *Park* (1982) 128 Cal.App.3d 469 [180 Cal.Rptr. 257].) But in this case, the negligent modification of the truck and any other negligence associated with the tires breaking off and injuring Officer Kelhi occurred *before* he responded to the risk created by the tires, not after.[5]

Should Officer Kelhi's fortuitous presence several hundred feet behind the pickup truck at the exact moment when the tires broke off remove this case from the firefighter's rule? Granted, this case does not fit the classic firefighter's rule scenario where the negligently created risk which caused the injury was the very reason the firefighter was summoned to the scene in his professional capacity. (See, e.g., *Scott* v. *E. L. Yeager Constr. Co.* (1970) 12 Cal.App.3d 1190, 1199 [91 Cal.Rptr. 232].) Here, Officer Kelhi was on his way to work, so his presence was not in response to a radio call concerning the runaway tires.

But despite the fortuitous nature of Officer Kelhi's presence, the runaway tires were a significant factor in prompting Officer Kelhi's subsequent actions. Once aware of the crippled truck and the runaway tires, Officer Kelhi unhesitatingly reacted as though on duty, which he was, and as though he had been summoned to deal with those precise hazards. Had an officer responded to a radio call and taken the same actions as Officer Kelhi, that officer would undoubtedly be barred by the firefighter's rule from recovering for his personal injuries caused by the runaway tires. But under the circumstances, there was no time for a radio call. Officer Kelhi's involvement lasted only 10 to 15 seconds. Under these facts, only an officer who was fortuitously on the scene at the moment the tires broke off could have acted as Officer Kelhi did to clear the freeway and move the disabled vehicle to the shoulder. Accordingly, the firefighter's rule is not inapplicable simply because Officer Kelhi was present on the scene by chance. The facts

---

[5]Officer Kelhi does not dispute the applicability of the firefighter's rule to his strict products liability claim. The California Supreme Court discussed the issue in *Lipson* v. *Superior Court*, *supra*, 31 Cal.3d at pages 374-378, and concluded the firefighter's rule may bar an officer's strict liability cause of action depending upon the facts. The court stated in part: "Here, [the firefighter] alleges in his complaint that his injuries were caused by [the chemical manufacturing plant owner's] maintenance of toxic chemicals on the premises, which constituted an ultrahazardous condition. If the toxic chemicals which injured [the firefighter] were a factor in causing the chemical boilover to which he responded, the fireman's rule would bar [the firefighter's] cause of action. On the other hand, if the toxic chemicals responsible for [the firefighter's] injuries were independent from the cause of the boilover, [the firefighter] would be able to maintain his strict liability claim." (*Id.* at p. 377, fn. omitted.)

establish, as a matter of law, that Officer Kelhi was injured by the very risk to which he responded in the line of duty to protect the public.

The irony here is that if he had ignored the situation and still been injured by the tires, Officer Kelhi would have a much stronger basis for arguing against the applicability of the firefighter's rule. For example, in *City of Sacramento* v. *Superior Court* (1982) 131 Cal.App.3d 395 [182 Cal.Rptr. 443], a highway patrol officer was not barred by the firefighter's rule from suing for injuries sustained when his vehicle was suddenly hit by a vehicle fleeing from two city police officers. In *City of Sacramento*, the highway patrol officer's presence was fortuitous and wholly independent of the city police officers and the fleeing suspect. But while Officer Kelhi's presence was also fortuitous, his trained and immediate reaction to the very hazard which injured him makes it impossible for us to say his presence was wholly independent of the cause of his injury.

*Donohue* v. *San Francisco Housing Authority* (1993) 16 Cal.App.4th 658 [20 Cal.Rptr.2d 148], while closer to our facts is also distinguishable. In *Donohue*, the firefighter was injured when he slipped on wet, slick concrete stairs during an unannounced fire safety inspection. The building owners were allegedly negligent for failing to install nonslip adhesive treads and for improperly hosing down the stairs. The appellate court held the firefighter's rule did not bar recovery since neither the absence of the nonslip treads nor the hosing down of the stairs was the reason for the firefighter's presence. He was not there to inspect the slipperiness of the stairs, ". . . he was there to inspect for fire code violations. Since the injuries were not caused by an act of negligence which prompted plaintiff's presence in the building, the firefighter's rule does not bar [his] claim. [Citation.]" (*Id.* at p. 663.)

Unlike the firefighter in *Donohue* who apparently had no official reason for dealing with the wet and slippery stairs, Officer Kelhi was on duty as a highway patrol traffic officer and he properly undertook immediate measures to protect the public from the crippled truck and runaway tires.

Officer Kelhi's situation is much closer to that in *Seibert Security Services, Inc.* v. *Superior Court, supra,* 18 Cal.App.4th 394, than in *Malo, City of Sacramento,* or *Donohue.* Officer Migailo in *Seibert* was fortuitously present at a hospital when he heard a cry for help from a private security guard who was being attacked by a mental patient. Officer Migailo was injured by the mental patient when he went to the security guard's assistance. Officer Migailo sued the security guard's employer for personal injuries sustained while subduing the mental patient. The trial court denied the security firm's motion for summary judgment based on the firefighter's rule, but the

appellate court in *Seibert* issued a peremptory writ directing the lower court to grant the motion. The appellate court in *Seibert* pointed out that while any alleged negligence on the part of the firm's guards "may have been 'independent of and unrelated to' the conduct which originally brought [Officer Migailo] to the hospital, it is factually undisputed that [the firm's guards' alleged negligence] was the *immediate cause* of Migailo's presence in or near the holding cell in which [the mental patient] was tussling with [the guard who had cried for help]." (*Seibert, supra,* 18 Cal.App.4th at p. 411.) The appellate court in *Seibert* further remarked that "any other result would be absurd." (*Ibid.*)

Here, as in *Seibert,* Officer Kelhi responded immediately and professionally to a hazard which fortuitously appeared in front of him. Officer Kelhi's injuries were caused by the exact risk he was attempting to minimize in the interest of public safety. We conclude Officer Kelhi is barred from recovery by the firefighter's rule.

## II

██ Officer Kelhi contends a triable issue of fact exists as to whether defendants owed him a duty of care. Officer Kelhi maintains the Fitzpatricks owed a duty of care to own and operate a safe vehicle, and the remaining defendants owed a duty of care to manufacture, assemble, modify, repair, and retail a defect-free pickup truck.

Assuming the defendants owed the general public those duties of care, we must decide whether the primary assumption of risk doctrine eliminates those duties of care as to Officer Kelhi. We conclude it does.

In *Donohue v. San Francisco Housing Authority, supra,* 16 Cal.App.4th at page 664, the appellate court explained that after *Knight v. Jewett, supra,* 3 Cal.4th 296, ". . . whether a plaintiff's cause of action is barred by assumption of the risk or is a mere variant of contributory negligence no longer turns on the reasonableness of the plaintiff's conduct or his subjective awareness of the nature and magnitude of the danger. . . . Instead, the central question is whether, in light of the nature of the activity and relationship of the parties, the defendant breached a duty of care toward the plaintiff or had no duty to remedy the danger which the plaintiff confronted. If the former, the defense is subsumed by comparative negligence principles and the claim survives. If the latter, the defense presents an absolute bar to the claim. ([*Knight v. Jewett, supra,* 3 Cal.4th] at pp. 314-315.)"

The plurality opinion in *Knight v. Jewett* pointed out in a footnote that the firefighter's rule is based on the theory "that the party who negligently

started the fire had *no legal duty* to protect the firefighter from the very danger that the firefighter is employed to confront. [Citations.]" (*Knight* v. *Jewett, supra,* 3 Cal.4th at p. 310, fn. 5, italics added.) The firefighter's rule thus apparently survives the limitations on the defense of reasonable implied assumption of the risk established in *Knight* v. *Jewett.*[6] When the firefighter's rule applies, the case falls under the primary assumption of risk category defined in *Knight* in which ". . . the defendant's acts breach no duty owed to the plaintiff[.]" (*Seibert Security Services, Inc.* v. *Superior Court, supra,* 18 Cal.App.4th at p. 405, fn. 4.)

As we have found the firefighter's rule applies here as a matter of law, it follows that this case falls under the primary assumption of the risk category. Accordingly, Officer Kelhi may not claim the defendants owed a duty of care to protect him from the unsafe and defective pickup truck's runaway tires.

We take no pleasure in barring Officer Kehli's action. As our discussion shows, while the firefighter's rule may be a wise one, implementation often depends on fortuitous circumstances and leads to results that seem unjust and, at least on the surface, inconsistent. The differences between those cases that allow recovery and those that do not are often exceedingly fine. The rule would have rewarded Officer Kehli had he chosen to ignore his duty, and penalizes him for his courage and conscientiousness. The rule also compels the conclusion that no duty is owed by those in the manufacturing and distribution chain of a defectively modified vehicle to those who, apart from their employment, would otherwise be owed a duty of care. While we dislike the result, we are bound by the rule, which is not ours to change. Whether others might be persuaded to reexamine the vague permutations of the doctrine is beyond our control.

## DISPOSITION

We affirm the summary judgment. Respondents are awarded costs.

Vogel (Miriam A.), J., concurred.

---

[6]We note the California Supreme Court has granted review of *Neighbarger* v. *Irwin Industries, Inc.*■ (Cal.App.), review granted July 22, 1993 (S033049), in which the majority Court of Appeal opinion concluded the primary assumption of the risk doctrine barred recovery by two petroleum refinery workers who were injured in a refinery fire. Although the majority opinion denied, in a footnote, that the basis of the opinion was the firefighter's rule, the dissenting opinion criticized the majority opinion for expanding the firefighter's rule by applying it to private firefighters. It is possible that the *Neighbarger* case will redefine the parameters of the firefighter's rule.

**SPENCER, P. J.**—I respectfully dissent. In my view, there are triable issues of fact as to whether plaintiff's action is barred by the firefighter's rule and the doctrine of assumption of the risk.

I

The firefighter's rule bars a recovery by a professional firefighter against one whose active or passive negligence creates a risk of the type usually dealt with by firefighters, which risk causes the firefighter's presence and injury. (*Lipson* v. *Superior Court* (1982) 31 Cal.3d 362, 367-368 [182 Cal.Rptr. 629, 644 P.2d 822].) This rule is equally applicable to peace officers. (*Hubbard* v. *Boelt* (1980) 28 Cal.3d 480, 484 [169 Cal.Rptr. 706, 620 P.2d 156].) The rule is based on the principle that it is the business of firefighters and peace officers to deal with particular hazards and, accordingly, they cannot complain of negligence in the creation of the very occasion for their engagement. (*Ibid.*) Underlying this principle are "(1) the traditional principle that 'one who has knowingly and voluntarily confronted a hazard cannot recover for injuries sustained thereby,' . . . and (2) a public policy to preclude tort recovery by [firefighters or peace officers] who are presumably adequately compensated (in special salary, retirement, and disability benefits) for undertaking their hazardous work . . . ." (*Ibid.*, citations omitted.)

In order for a defendant to invoke the firefighter's rule in a given situation, the defendant must make a two-pronged showing; it must show its negligence created an obvious risk and was the cause of the firefighter's or peace officer's presence at the scene. (*Donohue* v. *San Francisco Housing Authority* (1993) 16 Cal.App.4th 658, 663 [20 Cal.Rptr.2d 148], review den. Sept. 16, 1993.) The second prong of this showing is the crucial one here: Were plaintiff's injuries caused by acts of negligence which prompted plaintiff's presence at the scene? (*Ibid.*)

Two cases are illustrative of the analysis of this prong of the showing. In *City of Sacramento* v. *Superior Court* (1982) 131 Cal.App.3d 395, [182 Cal.Rptr. 443] plaintiff, a California Highway Patrol officer, was driving his patrol vehicle down the street while on duty. When he entered an intersection, his vehicle was struck by a vehicle driven by a suspected drunk driver who was being pursued by city police officers who allegedly had not activated their red lights and siren. (*Id.* at p. 399.) The court held the firefighter's rule did not apply to bar plaintiff's maintenance of an action for negligence. (*Id.* at p. 401.) It pointed out "[t]he policy reasons for the fire[fighter]'s rule do not apply where an injury occurs due to negligence which is unrelated to the fire[fighter] or police officer's performance of his

duties." (*Ibid.*) Plaintiff's "presence at the intersection in which the accident occurred was fortuitous and wholly independent of any conduct of [the city police officers or the suspected drunk driver]. Although plaintiff was still on duty at the time of the accident, there was insufficient connection between the performance of his duties and the cause of his injuries to preclude recovery under the fire[fighter]'s rule." (*Ibid.*)

In *Seibert Security Services, Inc.* v. *Superior Court* (1993) 18 Cal.App.4th 394 [22 Cal.Rptr.2d 514], plaintiff, a police officer, was at a hospital after having brought an arrestee there for examination of possible injuries. While he was there a mental patient attacked a security officer, who called for help. Plaintiff responded, helping to subdue the mental patient; he was injured in the process of doing so. (At pp. 402-403.) The court agreed with the principle that the firefighter's rule does not apply when an officer's presence at the scene is unrelated to the negligence which results in the officer's injury. (*Id.* at p. 407.) However, it held that principle inapplicable on the facts before it, noting plaintiff "was performing one duty—completing paperwork relating to the injured suspect—when the alleged negligence of Seibert employees caused him to initiate a new and different law enforcement action and attempt to subdue [the mental patient]. While the conduct of Seibert employees may have been 'independent of and unrelated to' the conduct which originally brought plaintiff to the hospital, it is factually undisputed that it was the *immediate cause* of [plaintiff's] presence in or near the holding cell in which" the mental patient was fighting with the security officer. (*Id.* at p. 411, italics in the original.)

The court in *Seibert Security Services, Inc.*, pointed out the case before it involved more than "the fortuitous presence" of a police officer. (*Seibert Security Services, Inc.* v. *Superior Court, supra,* 18 Cal.App.4th at p. 411.) It involved the officer's subsequent reaction in a professional capacity to a crisis situation created by defendant's negligence. (*Ibid.*) Once the officer responded in this manner, the firefighter's rule applied. (*Ibid.*) Thus, the question in the instant case is whether the evidence establishes as a matter of law that plaintiff was injured while responding in his professional capacity to a crisis situation. If so, the firefighter's rule applies and summary judgment properly was granted. (Code Civ. Proc., § 437c, subd. (c); *Seibert Security Services, Inc., supra,* at p. 411; *Chevron U.S.A., Inc.* v. *Superior Court* (1992) 4 Cal.App.4th 544, 548 [5 Cal.Rptr.2d 674].) If not, if the evidence establishes his presence at the scene was merely fortuitous or if there is a triable issue of fact as to his capacity at the scene, then summary judgment erroneously was granted. (Code Civ. Proc., § 437c, subd. (c); *City of Sacramento* v. *Superior Court, supra,* 131 Cal.App.3d at p. 401.)

According to plaintiff, in his answers to interrogatories, the accident occurred while he was on his way from his home to work as a California

Highway Patrol (CHP) officer. He was in the No. 2 lane on the Pomona Freeway and the Ford Ranger pickup truck was ahead of him and in the No. 3 lane. He saw the right axle of the truck break at the hub and the dual tires come off and start rolling behind the truck. Plaintiff slowed his motorcycle as the truck slowed and moved up toward the truck's driver on the driver's left to direct him to move his truck to the shoulder of the road. As the driver started to pull to the shoulder, the tires hit the wall along the shoulder, bounced into the air, hit the back of the truck, then came down on his motorcycle and right arm and leg, knocking him off the motorcycle and onto the road.

In his deposition, plaintiff elaborated on his description of the accident. He explained the truck was several hundred feet ahead of him and he was slowly overtaking it when he observed the tires come off the truck and the right rear axle frame bed area of the truck start scraping on the ground. Plaintiff immediately applied his brakes and activated his four-way hazard flashers; he began checking the traffic to his rear, looking for vehicles whose drivers did not see the tires rolling—"[i]n other words, creating an instant traffic break behind me so that no cars or trucks would run into the tires as they were running down the freeway."

The truck was slowing, braking in the No. 3 lane, and the tires were rolling forward in the No. 4 lane. Plaintiff and the other vehicles on the freeway also slowed. It appeared to plaintiff the pickup truck was going to stop in the No. 3 lane. Believing the tires would continue to roll forward in a relatively straight line and were not a hazard to him, plaintiff passed the tires, positioned himself near the driver's side of the truck and directed the driver to pull the truck over to the right shoulder of the road. As the driver complied, plaintiff slowed, regaining his position to the left rear of the truck, and looked for the tires. He saw the tires rolling behind him, in the No. 4 or 5 lane, at about 35 miles per hour. Suddenly, the tires veered to the right and hit the retaining wall along the shoulder of the road. They flew into the air and plaintiff immediately began braking, not knowing or wanting to know where they were going to land. The tires hit the back of the pickup truck and bounced back toward plaintiff. They hit the windscreen on his motorcycle, knocking him off the motorcycle and the motorcycle over on its side. As plaintiff fell, the tires hit him as well.

According to plaintiff, he "followed good safety practices by trying to clear the road," positioning himself to the left rear of the pickup truck and monitoring the location of the tires. He would have been remiss if he had ignored the situation; when he saw something like what occurred, he was supposed to take some sort of enforcement action and try to get the driver off

to the side of the road, and that was what he had done on this occasion. He also indicated that he positioned himself in the safest manner possible, trying to keep the pickup truck between himself and the tires for protection.

Plaintiff in his declaration clarified that his four-way hazard flashers were amber lights, which functioned as turn signals as well. They were not the flashing red enforcement lights he would have used in making an enforcement stop. Also, he did not pull the pickup truck over to the shoulder of the road in the same manner he would have had he been making an enforcement stop, for fear of coming into contact with the truck or tires. To that extent, he was not following established procedures or guidelines.

He also added that the entire accident took place within 10 to 15 seconds. Given his speed and his distance from the truck at the time the tires came off, he did not know what he could have done to avoid being involved in the accident. He had nowhere to go and no time in which to get there; he tried to pick the safest place in which to be, but it turned out to be unsafe.

It is clear plaintiff's presence on the freeway when the tires came off the pickup truck was unrelated to any negligence on the part of defendants which allegedly caused the tires to come off the truck. It also is clear some of the steps plaintiff took in response to the unfolding situation were in response to his duty as a CHP officer. He acknowledged he tried to create an instant traffic break to keep the freeway behind him clear and prevent other vehicles from being hit by the loose tires. He also tried to get the driver of the pickup truck to pull off the freeway onto the shoulder of the road. These actions were consistent with his duty to take appropriate enforcement actions when he observed an incident like this occur. After taking these actions, he tried to position himself in a safe location but was nonetheless hit by the tires.

On these facts, in this type of hybrid situation, I find it impossible to say, as a matter of law, that plaintiff's presence at the location where he was injured either was fortuitous or was the immediate result of his exercise of his duty as a CHP officer. It is not clear whether he was in the particular location he was in as a result of having done his duty as a police officer, or whether he would in any event have been in the same location, having thought it to be the safest one. Accordingly, I would hold the trial court erred in granting summary judgment based on the firefighter's rule; there is a triable issue of fact as to whether the rule applies to bar plaintiff's action. (Code Civ. Proc., § 437c, subd. (c); *Seibert Security Services, Inc.* v. *Superior Court, supra,* 18 Cal.App.4th at p. 411; *City of Sacramento* v. *Superior Court, supra,* 131 Cal.App.3d at p. 401.)

## II

In *Knight* v. *Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] and *Ford* v. *Gouin* (1992) 3 Cal.4th 339 [11 Cal.Rptr.2d 30, 834 P.2d 724], the California Supreme Court sought to determine whether the doctrine of assumption of the risk survived the adoption of comparative fault principles in *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393]. The plurality opinion in *Knight* (by George, J., with Lucas, C. J. and Arabian, J. conc.) noted that under *Li*, the doctrine of assumption of the risk bars a plaintiff's recovery in "those instances in which the assumption of risk doctrine embodies a legal conclusion that there is 'no duty' on the part of the defendant to protect the plaintiff from a particular risk—the category of assumption of risk that the legal commentators generally refer to as 'primary assumption of risk.' " (*Knight, supra*, at p. 308.) However, assumption of the risk is merged into the doctrine of comparative fault and does not completely bar a plaintiff's recovery in "those instances in which the defendant [owes] a duty of care to the plaintiff but the plaintiff knowingly encounters a risk of injury caused by the defendant's breach of that duty—what most commentators have termed 'secondary assumption of risk.' " (*Ibid.*) Thus, the key determination to be made in an assumption of the risk case is whether the defendant's duty of care has been reduced, placing the risk on the plaintiff rather than the defendant. (*Knight, supra*, at pp. 307-308.)

Of particular interest here is the plurality's comment as to when primary assumption of the risk may be found. It noted that, "[i]n addition to the sports setting," which *Knight* involved, ". . . the primary assumption of risk doctrine also comes into play in the category of cases often described as involving the 'firefighter's rule.' [Citation.] In its most classic form, the firefighter's rule involves the question whether a person who negligently has started a fire is liable for an injury sustained by a firefighter who is summoned to fight the fire; the rule provides that the person who started the fire is not liable under such circumstances. [Citation.] Although a number of theories have been cited to support this conclusion, the most persuasive explanation is that the party who negligently started the fire had no legal duty to protect the firefighter from the very danger that the firefighter is employed to confront. [Citations.]" (*Knight* v. *Jewett, supra*, 3 Cal.4th at pp. 309-310, fn. 5.)

*Ford* v. *Gouin, supra*, 3 Cal.4th 339 is consistent with *Knight*. Under these cases, the question here thus is whether, as a matter of law, plaintiff's recovery against defendants is barred by primary assumption of the risk, in that defendants owed no duty to plaintiff to protect him from risks arising

from any negligence in the construction and maintenance of the Ford Ranger pickup truck. (*Knight* v. *Jewett, supra,* 3 Cal.4th at p. 308; accord, *Donohue* v. *San Francisco Housing Authority, supra,* 16 Cal.App.4th at pp. 662-663.) Again, if plaintiff was present in his capacity as a CHP officer at the time he was injured, defendants had no duty to protect him from the risks he encountered as a CHP officer and any recovery is barred by primary assumption of the risk. (*Ibid.*) If his presence was fortuitous, defendants owed him the same duty they owed to anyone else on the road, and primary assumption of the risk is not a complete bar to his recovery. (*Ibid.*) Since I conclude there is a triable issue of material fact as to the nature of plaintiff's presence at the scene at the time he was injured, I would hold the trial court erred in granting summary judgment based on assumption of the risk. (Code Civ. Proc., § 437c, subd. (c).)

A petition for a rehearing was denied July 12, 1994, and the petition of appellant Patrick M. Kelhi for review by the Supreme Court was denied September 8, 1994.