[Civ. No. 54170. First Dist., Div. Four. Aug. 12, 1982.]

W. L. TYLER, JR., Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

COUNSEL

John W. Vaughn for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Matthew P. Boyle, Deputy Attorney General, for Defendant and Respondent.

## Opinion

CALDECOTT, P. J.—Plaintiff W. L. Tyler, Jr., appeals from the trial court's judgment dismissing the action after defendant State of California's demurrer to the complaint was sustained with leave to amend and Tyler failed to amend the complaint within the time prescribed.

The undisputed facts reveal that appellant, a California resident, owed an obligation for child support payments received on behalf of his minor child under the aid to families with dependent children (AFDC) program (42 U.S.C. §§ 651-662; Welf. & Inst. Code, §§ 11475-11489). Appellant's obligation had been established by judgment rendered in favor of Alameda County (action No. 489185) and by operation of law was assigned to respondent State of California (Welf. & Inst. Code, § 11477; *County of Santa Clara* v. *Support, Inc.* (1979) 89 Cal.App.3d 687 [152 Cal.Rptr. 754]; *In re Marriage of Shore* (1977) 71 Cal.App. 3d 290 [139 Cal.Rptr. 349]).

In 1979, appellant overpaid his state income tax by the sum of $321. Since appellant owed respondent an accumulated sum of $1,644 under the aforesaid judgment, the State Controller and the Department of Social Services offset the amount of tax refund against appellant's outstanding obligation pursuant to Government Code[1] sections 12419.4 and 12419.5.

The seminal issue presented on appeal is whether respondent was legally authorized to offset the tax refund in dispute against appellant's obligation pursuant to section 12419.5. Tyler argues that at the time here relevant the tax refund was held in a trust by the state and thus was not subject to the offset statute, citing *Bonelli* v. *State of California* (1977) 71 Cal.App.3d 459 [139 Cal.Rptr. 486]. Respondent, in turn, maintains that a later amendment to the statute clarified that the tax refunds possess the characteristics of a simple debt and therefore could be offset against a debt owed by the taxpayer to the state.

At the time of the accrual of the cause of action section 12419.5 provided that: "The Controller may, in his discretion, offset *any amount* due a state agency from a person or entity, against any amount owing such person or entity by any state agency. The Controller may deduct

---

[1]Unless otherwise indicated, all further references will be made to the Government Code.

from the claim, and draw his warrants for the amounts offset in favor of the respective state agencies to which due, and, for any balance, in favor of the claimant. Whenever insufficient to offset all amounts due state agencies, the amount available shall be applied in such manner as the Controller, in his discretion, shall determine. If, in the discretion of the Controller, the person or entity refuses or neglects to file his claim within a reasonable time, the head of the state agency owing the amount shall file the claim in behalf of such person or entity; if approved by the Controller it shall have the same force and effect as though filed by such person or entity. The amount due any person or entity from the State or any agency thereof is the net amount otherwise owing such person or entity after any offset as in this section provided." (Italics added.)

In interpreting the above code section, the court concluded in *Bonelli* that the income tax refund constituted a trust fund held in trust for the taxpayers and therefore, was not an amount owed to the taxpayers by the state within the meaning of the offset statute. However, *Bonelli* is distinguishable from the present case on its facts. In *Bonelli*, there was no issue of whether the tax refund constituted a trust fund as the state Controller specifically conceded that he was holding the funds in trust for the taxpayer. Thus *Bonelli* does not stand for the proposition that tax refunds are as a matter of law trust funds.

■ Furthermore, as respondent correctly points out, subsequent to the accrual of the cause of action, section 12419.5 was amended by the Legislature. The amendment effected in 1980, explicitly provides that "For purposes of this section [§ 12419.5] an amount owing to a person or entity by any state agency shall include any tax refund." (Stats. 1980, ch. 572, § 1.) While it is true that as a general rule statutes are not to be given retroactive effect unless the intent of the Legislature cannot be otherwise satisfied (*DiGenova* v. *State Board of Education* (1962) 57 Cal.2d 167, 176 [18 Cal.Rptr. 369, 367 P.2d 865]), an exception to the general rule is recognized in a case where the legislative amendment merely clarifies the existing law. (*Balen* v. *Peralta Junior College Dist.* (1974) 11 Cal.3d 821, 828, fn. 8 [114 Cal.Rptr. 589, 523 P.2d 629]; *Martin* v. *California Mut. B. & L. Assn.* (1941) 18 Cal.2d 478, 484 [116 P.2d 71]; *State Bd. of Equalization* v. *Board of Supervisors* (1980) 105 Cal.App.3d 813, 824 [164 Cal.Rptr. 739].) The rationale of this exception is that in such an instance, in essence, no retroactive effect is given to the statute because the true meaning of the

statute has been always the same. (*Stockton Sav. & Loan Bank* v. *Massanet* (1941) 18 Cal.2d 200, 202 [114 P.2d 592].)

The case at bench falls squarely within the aforestated exception. In amending section 12419.5, the Legislature made express findings that the amendment became necessary because *Bonelli* had created some confusion with respect to the character of tax refunds; that the state tax refunds have the attributes of a simple debt and do not create a trust relationship between the taxpayer and the state; and finally that the provisions of section 12419.5 constitute a clarification and declaration of the existing law. (Stats. 1980, ch. 572, § 2, pp. 1562-1563.)[2]

Appellant's contention that we should ignore the legislative interpretation of the statute because the ultimate construction of the statute is an exercise of judicial rather than legislative power (*People* v. *Childs* (1980) 112 Cal.App.3d 374, 389-390 [169 Cal.Rptr. 183], overruled on other grounds in *People* v. *Hernandez* (1981) 30 Cal.3d 462 [179 Cal.Rptr. 239, 637 P.2d 706] and *People* v. *Ramos* (1982) 30 Cal.3d 553 [180 Cal.Rptr. 266, 639 P.2d 908]) cannot be accepted. The law is well established that although construction of a statute is a judicial function, where a statute is unclear, a subsequent expression of the Legislature bearing upon the intent of the prior statute may be properly considered in determining the effect and meaning of the prior statute. (*Bd. of Soc. Welfare* v. *County of L.A.* (1945) 27 Cal.2d 90, 97 [162 Cal.Rptr. 635]; *Friends of Lake Arrowhead* v. *Board of Supervisors* (1974) 38 Cal.App.3d 497, 506 [113 Cal.Rptr. 539].) Also as amplified by authorities, the main characteristics of a trust relationship inter alia are: that the payor (trustor-beneficiary) retains the beneficial interest in the money paid (Rest.2d Trusts, § 12 coms. a and g at pp. 35, 37); that the trustee (payee) may not use the money for his own purposes (Civ. Code, § 2229; Rest.2d Trusts, §. 12, coms. g and *l*, at pp. 37, 41); that, in the absence of an agreement to the contrary, the trustee must keep the money separate from his own funds (Rest.2d Trusts, § 179); that

---

[2]Statutes 1980, chapter 572, section 2, page 1562, provides *in haec verba*: "The Legislature hereby finds that as a result of the court decision in Bonelli v. State of California (1977) 71 Cal.App.3d 459, some confusion has arisen concerning the character of tax refunds.

"This Legislature hereby declares that such tax refunds held or owing have the characteristics of a simple debt and do not create a trust relationship between the taxpayer and the state.

"The Legislature further declares that the provisions of Government Code section 12419.5 as amended by this act are a clarification and a declaration of existing law."

the trustee has a duty to invest the money and make it productive (Civ. Code, § 2262; Rest.2d Trusts, § 181) and is entitled to reimbursement for all expenses properly incurred in the performance of the trust (Civ. Code, § 2273); and that if the money paid is lost without the fault of the payee, the payee is not liable therefore and the loss is borne by the payor (Rest.2d Trusts, § 12, com. e at p. 36). By contrast, where the payment of the money is intended to create a debtor-creditor relationship, the money becomes the property of the payee; he may commingle it with his own funds and use it for his own purposes and the payor retains no beneficial interest in the money, but rather relies on his contractual rights against the payee (Rest.2d Trusts, § 12, coms. a and g, at pp. 35, 37; see also *Petherbridge* v. *Prudential Sav. & Loan Assn.* (1978) 79 Cal.App.3d 509, 517-518 [145 Cal.Rptr. 87]).

Even a cursory analysis reveals that the tax refund belongs to the latter stated category creating a simple debtor-creditor relationship between the state and the taxpayer. It is all but obvious that the state may commingle the surplus money received by an overpayment of income tax with its own funds and may use it for any purpose it sees fit. It is also evident that the state has no obligation to invest such money and account for the profits earned to the taxpayer. All the state is bound to do is to refund the money overpaid by the taxpayer if and when the fact of overpayment has been established. It follows that the tax refund *ipso jure* constitutes a debt and is therefore, subject to the offset statute.

In light of our conclusion we need not decide whether the order of the trial court should be sustained for the additional reason that appellant failed to exhaust his administrative remedies prior to the initiation of the present lawsuit. (*Kelly* v. *Springett* (9th Cir. 1975) 527 F.2d 1090; *Horack* v. *Franchise Tax Board* (1971) 18 Cal.App.3d 363, 368 [95 Cal.Rptr. 717].)

The judgment is affirmed.

Christian, J., and Poché, J., concurred.

A petition for a rehearing was denied September 3, 1982, and appellant's petition for a hearing by the Supreme Court was denied October 7, 1982.