[No. B122497. Second Dist., Div. Four. Sept. 23, 1998.]

EDWARD FINEMAN COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
BANK OF AMERICA NT & SA, Real Party in Interest.

COUNSEL

Burton, Norris & Galanter, Donald G. Norris and Douglas F. Galanter for Petitioner.

No appearance for Respondent.

Deborah S. Gershon, John M. Redmond and Ullar Vitsut for Real Party in Interest.

OPINION

**VOGEL (C. S.), P. J.**—In the present matter we review the trial court's order of summary adjudication that a bank customer's claim for damages based on the bank's payment of checks issued from 1991 through 1993 containing less than all of the required signatures is barred by the retroactive application of California Uniform Commercial Code[1] sections 4111 and 4406, subdivision (f).

We issued an order to show cause and set the matter for hearing. Having reviewed the pleadings and record and having heard oral argument, we deny the relief requested.

FACTUAL BACKGROUND

The Edward Fineman Company maintained a payroll checking account at Bank of America between 1991 and 1997. Under the terms of the account,

[1]Hereinafter all statutory references are to the California Uniform Commercial Code unless otherwise indicated.

withdrawals were authorized on one signature if signed by either Edward Fineman or Fred Fineman or by two signatures of either Barbara Gruver, Joann Mathieson, or Gregory K. Hanssen.

Between January 1, 1991, and June 1, 1996, Bank of America honored and paid 83 checks in the aggregate amount of $248,000 drawn on the Fineman account signed only by Gruver, Fineman's accounting manager. On May 24, 1996, Fineman contacted Bank of America directing the bank to remove Gruver as an authorized signature for the Fineman checking account. This was the first time Bank of America received any information that Gruver had drawn and negotiated checks on the Fineman Company account contrary to the terms of the account signature contract. Fineman demanded that Bank of America replace and recredit its payroll checking account in the amount of all sums charged for the payment of the checks signed by Gruver. Bank of America refused to do so and Fineman sued to recover the sums paid on the checks.

PROCEDURAL BACKGROUND

Fineman filed its action against Bank of America in July 1997. The first amended complaint alleges causes of action for breach of contract, negligence, and for damages under section 4103.[2] In each cause of action Fineman alleged: "7. Between January 1, 1991 and June 1, 1996, there were presented to defendants for payment eighty-three (83) checks in the aggregate amount of $248,000, bearing only the signature of Gruver and drawn on the Checking Account. Defendants paid these checks and charged Fineman's account for the payments. These checks were made without Fineman's knowledge, authorization, or consent. [¶] 8. Of the checks referenced above, twenty-three (23) in the aggregate amount of $63,500 were presented to and paid by defendants between January 1, 1991 and January 1, 1993. Thirty five (35) checks in the aggregate amount of $81,600 were presented to and paid by defendants between April 1, 1995 and May 31, 1996."

Bank of America moved for summary adjudication of issues with respect to the twenty-three checks drawn between January 1, 1991, and January 1, 1993, on the grounds that the claims are barred by section 4111 (three years to file action) and section 4406, subdivision (f) (one year to discover and report losses due to unauthorized signatures). Fineman opposed the motion arguing that sections 4111 and 4406 are inapplicable because they were not

---

[2]Section 4103, subdivision (e), provides: "The measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount that could not have been realized by the exercise of ordinary care. If there is also bad faith it includes any other damages the party suffered as a proximate consequence."

enacted until 1992 and only became effective in January of 1993. The argument with respect to section 4406, subdivision (f) necessarily involves the application of section 3403, subdivision (b), also amended in 1992 and effective 1993, which explicitly defines an "unauthorized signature" to include checks lacking a required signature. Because the "discover and report" provisions of section 4406, subdivision (f) are only triggered by checks with "unauthorized signatures," the retroactive application of section 3403, subdivision (b) is necessarily implicated.

Finally, Fineman maintains that summary adjudication may not be granted in any event because it would not dispose of an entire cause of action as required by Code of Civil Procedure section 437c, subdivision (f).

The trial court granted Bank of America's motion and issued an order of summary adjudication holding that Fineman's claim for the twenty-three 1991-1993 checks is barred by sections 4111 and 4406.

## DISCUSSION

### Standard of Review

█ The grant and denial of a summary judgment are subject to de novo review. (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs 1 (The Rutter Group 1997) ¶ 8:165, p. 8-81.) In the present matter, there are no disputed facts and no conflicts in the evidence regarding the affirmative defenses of the statute of limitations based on section 4111 or the statute of preclusion, section 4406. The questions presented are purely ones of law to be decided by the court, not a jury. (*Kurokawa* v. *Blum* (1988) 199 Cal.App.3d 976, 991 [245 Cal.Rptr. 463].) Accordingly, we apply that standard to this matter where there are no disputed facts and the central issues are only questions of law.

### Code of Civil Procedure Section 437c, Subdivision (f)

█ Fineman contends that the trial court's order of summary adjudication is impermissible because it does not ". . . completely dispose[] of a cause of action [or] an affirmative defense . . . ." (Code Civ. Proc., § 437c, subd. (f)(1).) The premise for Fineman's contention is that it pled all of the 23 of the 1991 to 1993 unauthorized checks in the aggregate amount of $63,500 in each of its 3 causes of action. However, just because Fineman has elected to aggregate its claims does not forestall Bank of America from segregating them for the purpose of assessing each check to determine if it is barred by sections 4111 and 4406.

It is established law that the owner of a checking account may file an action against the drawee bank for paying a forged check even if it is based only on the payment of one unauthorized check. (*Basch* v. *Bank of America* (1943) 22 Cal.2d 316, 321 [139 P.2d 1] [". . . a bank pays a forged *check* at its peril; and in such event, payment in legal contemplation will be considered to have been made from the bank's own funds so that it has no right to charge the depositor's account with the amount disbursed contrary to his genuine order, and it will be liable to him for so doing" (italics added)].)

Fineman's claims are based both upon a breach of contract and violation of section 4401. "The code provides that as between the drawee bank and the depositor, losses from a forged or unauthorized signature are borne by the bank since payment not made pursuant to directions of a 'properly payable' order cannot be charged to the depositor's account. (Com. Code, § 3401, subd. (1) . . . .)" (*Fireman's Fund Ins. Co.* v. *Security Pacific Nat. Bank* (1978) 85 Cal.App.3d 797, 804 [149 Cal.Rptr. 883], fns. omitted.) "The relationship between a payor bank and its customers is that of debtor and creditor, being founded upon contract, and the bank is under a duty to pay checks only in strict accordance with its customer's order. . . . The bank is without authority to charge its customer's account with an unauthorized order, and payment of such is said to have been made out of the bank's own funds. . . . [¶] California Uniform Commercial Code section 3401, subdivision (1) provides that a person is not liable on an instrument unless his signature appears thereon. California Uniform Commercial Code section 3404, subdivision (1) states that an unauthorized signature which, under California Uniform Commercial Code section 1201, subdivision (43) includes one made without actual, implied or apparent authority, is wholly inoperative as the signature of a person whose name is signed. [¶] By negative implication, a check with an unauthorized signature is not properly payable, and the bank breaches its agreement with its customer when paying such an item." (*Danning* v. *Bank of America* (1984) 151 Cal.App.3d 961, 969 [199 Cal.Rptr. 163].)

In *Sun'n Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671 [148 Cal.Rptr. 329, 582 P.2d 920], an employee altered nine checks made payable to United California Bank (UCB) drawn on her employer's bank account. Upon presentation of the altered checks, UCB permitted the proceeds of the checks to be deposited into the employee's account. When the employer discovered the fraudulent activity, it sued UCB. UCB asserted as an affirmative defense section 4406, subdivision (f), barring claims for altered checks if the owner of the account fails to discover and report the alteration within one year. The *Sun'n Sand* court held that eight of the nine checks were issued sufficiently in advance of the filing of the action to

compel the inference that they were negotiated and made available to Sun'n Sand with its monthly bank statements more than one year before it filed its action. The court concluded that a new one-year period begins to run with *each successive check*, specifically holding that the ninth check was not barred by the one-year limitation. Thus, *Sun'n Sand* instructs that each altered, forged, or unauthorized check stands on its own as a separate claim, independently subject to such affirmative defenses as may be applicable. In other words, notwithstanding the aggregation of the 23 1991-1993 checks, each constitutes a separate cause of action susceptible to a complete disposition if barred by affirmative defenses asserted by Bank of America.

We conclude that "the clearly articulated legislative intent of [Code of Civil Procedure] section 437c, subdivision (f), is effectuated by applying the section in a manner which would provide for the determination on the merits of summary adjudication motions involving separate and distinct wrongful acts which are combined in the same cause of action. To rule otherwise would defeat the time and cost saving purposes of the amendment and allow a cause of action in its entirety to proceed to trial even where, as here, a separate and distinct alleged obligation or claim may be summarily defeated by summary adjudication. Accordingly, we hold that under subdivision (f) of section 437c, a party may present a motion for summary adjudication challenging a separate and distinct wrongful act even though combined with other wrongful acts alleged in the same cause of action." (*Lilienthal & Fowler* v. *Superior Court* (1993) 12 Cal.App.4th 1848, 1854-1855 [16 Cal.Rptr.2d 458], fn. omitted.)

*Section 4406*

Prior to 1993, section 4406 provided in relevant part: "(4) Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items [canceled checks] are made available to the customer . . . discover and report his unauthorized signature or any alteration on the face or back of the item [check] or any unauthorized indorsement, . . . is precluded from asserting against the bank such unauthorized signature or indorsement or such alteration. The burden of establishing the fact of such unauthorized signature or indorsement or such alteration is on the customer." In 1993, an amendment of section 4406, subdivision (4) became effective which extended the obligation of the customer to examine his monthly statements and

canceled checks to discover and promptly report any unauthorized or altered checks to the bank.[3]

It is clear, therefore, that during all relevant times, the substance of section 4406 imposed an obligation on the customer to examine his monthly statements and canceled checks to discover and report any payment by the bank of any items bearing unauthorized signatures. Failure to do so within the prescribed one-year period precluded the filing of an action for such unauthorized payment. ■ Section 4406 "is not per se a statute of limitation but instead is an issue-preclusion statute. Unlike a statute of limitations, it does not purport to bar an action against a bank; rather, it simply precludes a customer from asserting a forgery or alteration against the bank if the customer has failed to discover and report the forgery or alteration to the bank." (*Roy Supply, Inc.* v. *Wells Fargo Bank* (1995) 39 Cal.App.4th 1051, 1065-1066 [46 Cal.Rptr.2d 309].) ■ In summary, the customer must comply with the statutory prerequisite of timely reporting discrepancies as a condition precedent to suing for recovery of any unauthorized payments. Whether section 4406 is applicable, let alone retroactive, depends on whether Gruver's sole signature on the 23 1991-1993 checks was an "unauthorized signature" pursuant to section 3403, subdivision (b).

Prior to 1993, section 1201, subdivision (43) defined "unauthorized" signature or endorsement as "one made without actual, implied or apparent authority and includes a forgery." (This provision is now in subdivision (42) of section 1201.) Also, former section 3403, which dealt with authorized representatives, did not define "unauthorized" signatures.[4] In *Far West Citrus, Inc.* v. *Bank of America* (1979) 91 Cal.App.3d 913 [154 Cal.Rptr. 464], this division held that a check signed by only one of the two required signatures was not an item bearing an "unauthorized" signature. From that

---

[3]Section 4406, subdivision (f), provides: "Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items [canceled checks] are made available to the customer . . . discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration."

[4]Former section 3403 provided: "(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority. [¶] (2) An authorized representative who signs his own name to an instrument [¶] (a) Is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity; [¶] (b) Except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity. [¶] (3) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity."

premise, the *Far West Citrus* court concluded that the relevant provisions of section 4406 were not triggered and the customer's action against the bank was not precluded by his failure to discover and, within one year, report a check bearing an unauthorized signature.

Section 3403 was amended in 1993 to provide: "(a) Unless otherwise provided in this division or Division 4 (commencing with Section 4101), an unauthorized signature is ineffective except as the signature of the unauthorized signer in favor of a person who in good faith pays the instrument or takes it for value. An unauthorized signature may be ratified for all purposes of this division. [¶] (b) *If the signature of more than one person is required to constitute the authorized signature of an organization, the signature of the organization is unauthorized if one of the required signatures is lacking. . . .*" (Italics added.) This amendment is directly contrary to the holding of *Far West Citrus, Inc.* v. *Bank of America, supra*, 91 Cal.App.3d 913, and unequivocally imposes the obligations of section 4406, subdivision (f) on customers with checking accounts that require more than one signature.

Fireman contends that the amendment is a change in the substantive law and cannot be applied retrospectively. As primary authority to support that contention Fineman relies on *Title Ins. Co.* v. *Comerica Bank—California* (1994) 27 Cal.App.4th 800 [32 Cal.Rptr.2d 735]. There a check was issued to a borrower who obtained an equity loan giving a trust deed as security. Someone posing as the borrower endorsed the check and presented it to the bank for payment. The bank paid the impostor. The title insurer, subrogated to the rights of the lender, sued the bank for negligence, contending it failed to implement procedures that would have prevented the payment to the impostor. The bank asserted a defense based on section 3404, subdivision (a) which makes an endorsement by any person effective if an impostor had induced the issuance of the instrument to either the impostor or someone acting in concert with the impostor. The bank contended that the borrower had acted in concert with her son.

The title insurer argued that section 3404 was not enacted until 1992, after the alleged events occurred, and could not be applied retroactively. It contended that the predecessor provision, section 3405, applied. The court agreed that "There is no basis for the Bank's assumption that the current provisions, added in 1992, were intended to operate retroactively. A statute affecting substantive rights and obligations should be given prospective effect absent a clear indication that the Legislature intended otherwise." (27 Cal.App.4th at p. 804, fn. 2.) Bank of America argues that there is a significant and structural difference between the application of the impostor rule under the pre-1992 amended provisions of section 3404, subdivision (a)

and the application of the 1992 amendments of sections 3403, subdivision (b), and 4406, subdivision (f) at issue here. Bank of America argues that the difference is that the Legislature intended section 3403, subdivision (b), defining "unauthorized signatures," to be clarifying legislation, declaring not only what the law is, but what it had been.

Bank of America directs our consideration to the language of the preamble to the Senate and Assembly Conference Committees on Senate Bill No. 833. Both houses of the state Legislature declared: "In order to indicate more fully its intent with respect to Senate Bill No. 833, the Conference Committee makes the following report. [¶] Senate Bill No. 833 was introduced to effectuate the recommendation of the California Commission on Uniform State Laws that the revision of Article 3, with conforming and miscellaneous amendments to Articles 1 and 4, of the Uniform Commercial Code promulgated by the National Conference of Commissioners on Uniform State Laws be adopted in California. Except for the revised comments set forth below, the Official Comments of the National Conference to the changes in the Uniform Commercial Code reflect the intent of the Conference committee in approving Senate Bill No. 833." (Conf. Com. Rep. on Sen. Bill No. 833, Sen. Daily J., Aug. 9, 1992, p. 7350; Assem. Daily J., Aug. 10, 1992, p. 8706.)[5]

It is apparent that the Legislature declared that the 1993 amendments to articles 1, 3, and 4 of the Commercial Code are to be interpreted and applied in accordance with the official comments of the National Conference of Commissioners on Uniform State Laws. The relevant California Uniform Commercial Code Comment to section 3403, subdivision (b) provides: "4. Subsection (b) *clarifies* the meaning of 'unauthorized' in cases in which an instrument contains less than all of the signatures that are required as authority to pay a check. Judicial authority was split on the issue whether the one-year notice period under former Section 4-406(4) . . . barred a customer's suit against a payor bank that paid a check containing less than all of the signatures required by the customer to authorize payment of the check. Some cases took the view that if a customer required that a check contain the signatures of both A and B to authorize payment and only A signed, there was no unauthorized signature within the meaning of that term in former Section 4-406(4) because A's signature was neither unauthorized nor forged. The other cases *correctly* pointed out that it was the customer's signature at issue and not that of A; hence, the customer's signature was unauthorized if all signatures required to authorize payment of the check were not on the

---

[5]The reference to the "revised comments set forth below" in the preambles to the conference committees' reports has no application to any of the provisions of the California Uniform Commercial Code at issue in this matter.

check. Subsection (b) follows the latter line of cases. The same analysis applies if A forged the signature of B. Because the forgery is not effective as a signature of B, the required signature of B is lacking." (Cal. U. Com. Code com., 23B West's Ann. Cal. U. Com. Code, § 3403 (1998 pocket supp.) p. 62.) The comment's reference to cases that hold a check signed only by A is neither unauthorized nor forged is a clear reference to the holding in *Far West Citrus, Inc.* v. *Bank of America, supra*, 91 Cal.App.3d 913, and is an implicit declaration that it is *incorrect*.

Bank of America asserts that when the Legislature "clarifies" an existing provision of law, it operates retroactively on the premise that the clarification is simply stating what the declared law is and has always been. Specifically, Bank of America contends that "where a clarifying amendment has been enacted . . . , prior judicial interpretation which is inconsistent with the intent as expressed in the amendment will not control, even where the cause of action accrued prior to the amendment." Bank of America cites *City of Redlands* v. *Sorensen* (1985) 176 Cal.App.3d 202 [221 Cal.Rptr. 728] in support of that contention.

In *City of Redlands* v. *Sorensen, supra*, 176 Cal.App.3d 202, a police officer was injured in an automobile crash in the course of a high-speed chase. The police officer filed a third party tort action against the defendant. The city, as his employer, filed an action under Labor Code section 3852 to recover the workers' compensation benefits it paid to its employee. The defendant moved for summary judgment against both the police officer and the city on the ground that the claim was barred by the fireman's rule as explicated in *Hubbard* v. *Boelt* (1980) 28 Cal.3d 480 [169 Cal.Rptr. 706, 620 P.2d 156]. The motion was granted and the city appealed. The city contended that amendments to Civil Code section 1714.9 enacted after the date the police officer sustained injuries, abrogated the holding of *Hubbard* and should be applied retroactively to prevent the application of the fireman's rule. The court agreed and affirmed the summary judgment. Its decision is instructive on the retroactive application of sections 3403, subdivision (b) and 4406, subdivision (f) and the continued viability of *Far Citrus West, Inc.* v. *Bank of America, supra*, 91 Cal.App.3d 913.

To understand the significance and reach of *City of Redlands* v. *Sorensen, supra*, 176 Cal.App.3d 202, we review in detail the facts and holding in *Hubbard* v. *Boelt, supra*, 28 Cal.3d 480. That case also involved a police officer injured in a high-speed chase. Confronted with the fireman's rule, Hubbard argued that by ignoring the police vehicle's flashing lights and siren, the third party driver was disregarding the police officer's command to stop. The thrust of that contention was that the third party driver's refusal to

stop amounted to an independent act, overcoming application of the fireman's rule. The *Hubbard* court acknowledged the existence of the independent act exception but rejected the analysis that refusal to stop was within the exception, reasoning "Plaintiff was injured while pursuing a speeding traffic violator, and in discharge of his official duty incurred the very risk which occasioned his presence at the accident [*sic*] scene." (*Id.* at pp. 486-487.) *Hubbard* concluded that statutes making it a misdemeanor to disregard police sirens and flashing red lights or making it unlawful to resist or obstruct a police officer were not intended to protect police officers and are not within the independent act exception to the fireman's rule. "The rule, which has been held equally applicable to policemen injured in the course of their duties, is based on the principle that it is the business of a fireman or policeman to deal with particular hazards, and that accordingly ' "he cannot complain of negligence in the creation of the very occasion for his engagement." ' " (*Id.* at p. 484.)

The court in *City of Redlands* v. *Sorenson, supra,* 176 Cal.App.3d 202, 207-208, noted that there are exceptions to the fireman's rule where an independent act of negligence, "which was not the cause of the policeman's or fireman's presence at the scene, causes injury after the policeman or fireman has arrived. [Citations.] [¶] Whether classified as only a specific subcategory of the independent act exception or a separate exception, there is also a public policy exception to application of the fireman's rule for situations in which the negligence causing injury occurred after the plaintiff's presence was known or should have been known and involved the violation of a statute enacted to protect the class of persons of which the plaintiff is a member." The court then noted that in 1982 the law was changed to provide: " 'Notwithstanding statutory or decisional law to the contrary, any person is responsible not only for the results of that person's willful acts causing injury to a peace officer, firefighter, or any emergency medical personnel employed by a public entity, but also for any injury occasioned to that person by the want of ordinary care or skill in the management of the person's property or person . . . .' " (*Id.* at pp. 209-210.)[6]

In essence, the court in *City of Redlands* viewed the 1982 amendment of Civil Code section 1714.9 as an explicit adoption of the independent act

---

[6]In response to the *Hubbard* decision, an emergency bill was passed by the Legislature amending Labor Code section 3852, " 'In order to secure the rights of policemen and firefighters.' " (*City of Redlands* v. *Sorenson, supra,* 176 Cal.App.3d at p. 209.) In essence, the law was intended to allow public entities to recover workers' compensation benefits paid to injured policemen and firefighters and to protect the rights of the police and firefighters to recover for injuries. Later in 1982 these provisions were deleted from Labor Code section 3852 and modified and clarified in Civil Code section 1714.9. (176 Cal.App.3d at p. 209.)

exception to the fireman's rule dismissed by the *Hubbard* court. The court declared: "It is true that a statute or an amendment to a statute generally will not be applied retroactively unless the legislative intent that that be done is clear. . . . However, it is also well established that the enactment of a statute or an amendment to a statute for the purpose of clarifying preexisting law or making express the original legislative intent is not considered a change in the law; in legal theory it simply states the law as it was all the time, and no question of retroactive application is involved." (176 Cal.App.3d at p. 211.) "The principle [of the public policy exception to the fireman's rule] was recognized in . . . *Hubbard* v. *Boelt, supra,* 28 Cal.3d 480, 485-486 . . . . [H]owever, the exception was found inapplicable because the [*Hubbard*] court believed that the statutes claimed to be violated were not enacted for the protection of policemen in the performance of their duties. [¶] . . . Under traditional statutory interpretation and analysis, however, that pronouncement effects no change in the law. It simply clarifies that that was the intent of the Legislature from the time it enacted the several statutes 'prohibiting resistance or requiring a person to comply with an order of a peace officer or firefighter' and signifies that the court in . . . [the] *Hubbard* decision[] misconceived the Legislature's intent in this regard. In legal theory the new legislation constituted no change in the law and its application to a case in which the negligence or misconduct occurred before the effective date of the legislation does not constitute an invidious retroactive application of law." (*City of Redlands* v. *Sorensen, supra,* 176 Cal.App.3d at p. 212.) ■ Other decisional authority is in accord with the proposition that clarifying legislative enactments and amendments operate retroactively and nullify decisional law inconsistent with the declared intent of the Legislature. (See *Tyler* v. *State of California* (1982) 134 Cal.App.3d 973, 976 [185 Cal.Rptr. 49] ["While it is true that as a general rule statutes are not to be given retroactive effect unless the intent of the Legislature cannot be otherwise satisfied . . . , an exception to the general rule is recognized in a case where the legislative amendment merely clarifies the existing law"]; *Escalante* v. *City of Hermosa Beach* (1987) 195 Cal.App.3d 1009, 1020 [241 Cal.Rptr. 199] [quoting the foregoing recitation from *Tyler* v. *State of California* and explaining that " 'The rationale of this exception is that in such an instance, in essence, no retroactive effect is given to the statute because the true meaning of the statute has been always the same.' "].)

■ The 1993 enactment of section 3403 must be interpreted according to the California Uniform Commercial Code comments as mandated by the conference committees of the Legislature. The official comment explicating section 3403, subdivision (b) declares that it "clarifies" the meaning of "unauthorized" in cases where checks lack all of the authorized signatures

and implicitly abrogates the 1979 holding of *Far West Citrus, Inc.* v. *Bank of America, supra*, 91 Cal.App.3d 913, 917. Applying a legislative construction that recognizes that section 3403, subdivision (b) is simply a clarification of existing law, we conclude that the 23 1991-1993 checks lacking, as they did, a second required signature fall within the classification of items that must be discovered and reported pursuant to section 4406, subdivision (f). Having failed to discover and report within the prescribed one-year period, Fineman is precluded from pursuing any recovery against Bank of America.

*Section 4111*

The three-year statute of limitations of section 4111 became effective in January 1993. It provides that "An action to enforce an obligation, duty, or right arising under this division shall be commenced within three years after the cause of action accrues." All of the causes of action based on the 23 1991-1993 checks accrued in that time span. Since the present action was not filed until 1997, the time within which to pursue recovery has expired.

Fineman makes two arguments against the application of section 4111. First, it focuses on the language of the provision that the limitation applies only to an obligation, duty or right ". . . arising under this division" which it contends makes the three-year limitation inapplicable to any other provision of the California Uniform Commercial Code. Second, it resurrects its contention that the 1993 legislation cannot be applied retroactively.

The first argument is disposed of by section 4102, subdivision (a), which provides: "To the extent that items within this division [Division 4] are also within Divisions 3 (commencing with Section 3101) and 8 (commencing with Section 8101), they are subject to those divisions. If there is conflict, this division governs Division 3 . . . ." It appears that Fineman fails to recognize that its claim is based on contract and the implicit duty imposed by section 4101 within division 4. The enactment of section 4111 establishes the time within which an action to enforce an obligation, duty, or right pursuant to division 4 of the California Uniform Commercial Code—Bank Deposits and Collections—must be filed.

There is no dispute that section 4111 is a statute of limitation. As such it is applicable retroactively. "Well settled law . . . establishes that retrospective application of a shortened limitations period is permissible provided the party has a reasonable time to avail himself of his remedy before the statute cuts off his right." (*Aronson* v. *Superior Court* (1987) 191 Cal.App.3d 294,

297 [236 Cal.Rptr. 347].) Section 4111 became effective in 1993, leaving Fineman with an entire year to file its action.

■ Statutes of limitations are generally described as statutes of "repose," to prevent the assertion of stale claims. They are favored by the law as meritorious defenses to prevent the revival of claims by those who have slumbered on their rights. (3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 408, pp. 513-514.) ■ This is a matter for which a time bar is appropriate. It was not the expiration of any statute of limitations that cut off Fineman's claims; it was its own attenuated inattention to its internal accounting procedures that made it a victim of one in whom it reposed its trust.

DISPOSITION

The order to show cause is discharged. The petition is denied. The parties to bear their own costs.

Cooper, J.,* concurred.

EPSTEIN, J.—I concur in the judgment because I agree that under former California Uniform Commercial Code section 4406, properly construed, Gruver's signature, alone, was an unauthorized signature.

We reached the opposite conclusion in *Far West Citrus, Inc.* v. *Bank of America* (1979) 91 Cal.App.3d 913 [154 Cal.Rptr. 464]. Looking at the question purely on the basis of the statutory language, without consideration of anything else, I think the *Far West Citrus* decision is understandable. After all, if two persons are authorized to sign a check, and the drawee bank is not permitted to honor the check unless both signatures are present, it is logical to say that each signature is "authorized." If there was nothing more to consider, I probably would reach that conclusion today.

But there is more. The statute we are construing is part of the Uniform Commercial Code, probably the most familiar of uniform laws. In construing a uniform law, the court must be "mindful of the importance of securing uniformity in the interpretation of the provisions . . . among the various jurisdictions." (*Bank of America* v. *Security Pacific Nat. Bank* (1972) 23 Cal.App.3d 638, 643 [100 Cal.Rptr. 438].) In promoting the integrity, certainty and finality of commercial transactions, the Uniform Commercial Code departs from a number of common law rules. It does so in favor of "a more mechanical system, characterized by certainty and finality, and based

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

only upon facts unlikely to be disputed in litigation . . . ." (*Chicago Title Ins. Co.* v. *California Canadian Bank* (1991) 1 Cal.App.4th 798, 811 [2 Cal.Rptr.2d 422].)

It was clear before *Far West* was decided, and clearer since, that almost every other jurisdiction to consider the question has held that when the signatures of two or more persons are required to direct a drawee bank to honor a check, a single signature for the drawer is "unauthorized." (See, e.g., *Knight Communications* v. *Boatman's Nat.* (Mo. Ct.App. 1991) 805 S.W.2d 199, 201; *Provident Savings Bank* v. *United Jersey Bank* (1985) 207 N.J.Super. 303 [504 A.2d 135, 139]; *Rascar, Inc.* v. *Bank of Oregon* (1978) 87 Wis.2d 446 [275 N.W.2d 108, 111].) This construction is consistent with the Uniform Commercial Code objective of requiring a drawer to exercise reasonable diligence in reviewing negotiated checks and reporting errors to the drawee bank. The other construction is not.

Since appellant failed to discover and report the error within the one year allowed for the purpose by California Uniform Commercial Code section 4406, subdivision (f), its claim is barred. For that reason, summary judgment was properly granted.

A petition for a rehearing was denied October 2, 1998.