[No. B133127. Second Dist., Div. Two. Aug. 1, 2000.]

DIANA MICHELSON, Plaintiff and Appellant, v.
MID-CENTURY INSURANCE COMPANY, Defendant and Respondent.

COUNSEL

Jeffrey D. Diamond for Plaintiff and Appellant.

Horvitz & Levy, Lisa Perrochet, Holly R. Paul; Hollins, Schecter, Feinstein & Condas and Andrew S. Hollins for Defendant and Respondent.

OPINION

NOTT, J.—Diana Michelson appeals from a judgment entered following the grant of summary judgment in favor of respondent Mid-Century Insurance Company (Mid-Century).

BACKGROUND

This is one of many cases arising out of the January 17, 1994 Northridge earthquake. Michelson was a homeowner insured by Mid-Century. The policy had a provision requiring commencement of litigation within one year after occurrence of a loss.

On February 19, 1994, Michelson submitted a claim to Mid-Century for damage sustained to her residence by the Northridge earthquake.[1] Mid-Century denied the claim on March 16, 1994. The claim was denied because the cost to repair was estimated to be $6,964.76, whereas Michelson was required to first pay a deductible of $20,700 (10 percent of $207,000). In the letter of denial, Mid-Century stated that should Michelson discover any

---

[1]The parties have not provided us with a copy of that claim, so we do not know either the damage or the dollar amount Michelson was asking for at that point in time.

additional damage or have any further questions, Mid-Century "will be happy to re-open your file."

On May 3, 1995, over a year after the earthquake, Michelson retained counsel, who submitted a claim showing earthquake damage of $257,816.78.

On February 16, 1996, Mid-Century made payment on a portion of Michelson's claim.[2] Evidently the unpaid, disputed portion of the claim involved asbestos contamination, among other things. The claim was denied by Mid-Century on July 2, 1996, on the dual basis of refusal to allow inspection and the one-year limitation provision of the policy.

On December 18, 1996, Michelson requested mediation through a program sponsored by the California Department of Insurance. Mid-Century agreed. Mediation was held on January 15, 1997,[3] but was not successful in resolving the matter. The Department of Insurance gave written notice to the parties on January 27, 1997, that the program was terminated as to them.

Michelson filed suit against Mid-Century on July 29, 1997. The complaint contained causes of action for breach of contract, breach of the covenant of good faith and fair dealing, intentional and negligent misrepresentation, fraud, and unfair competition. The complaint was later amended in February 1998.

Mid-Century subsequently brought a motion for summary judgment based on the one-year suit provision in the policy. Michelson argued that the one year had been tolled. The trial court ruled that even taking tolling into consideration, Michelson had not timely filed suit.

DISCUSSION

1. *Standard of Review*

The grant of a motion for summary judgment is reviewed de novo on appeal. (*Edward Fineman Co. v. Superior Court* (1998) 66 Cal.App.4th 1110, 1116 [78 Cal.Rptr.2d 478].) In making that independent review, we are obliged to determine whether the record shows any triable issue of material fact. (*Stratton v. First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083

---

[2]The record does not reveal what amount was paid, nor do the parties enlighten us in their respective briefs.

[3]The record indicates that the meeting was initially set for January 9, 1997, but was rescheduled to January 15, 1997. However, in their appellate briefs, the parties both stated that the meeting was held on January 9, 1997. We asked the parties to clarify the conflict. They have done so by agreeing that January 15, 1997, was the correct date.

[258 Cal.Rptr. 721].) The overall policy of the law is to favor trial on the merits. Therefore, all close questions as to the propriety of granting the motion will be resolved in favor of the party opposing the motion. (*Ibid.*) In that same vein, the moving papers will be strictly construed while the opposing papers will be liberally construed. (*Ibid.*)

2. *Analysis*

   a. *Overview*

The time line of various events is crucial to resolution of this appeal. It is:

January 17, 1994—the earthquake occurred.

February 19, 1994—Michelson made a claim to Mid-Century.

March 16, 1994—Michelson's claim was denied.

May 3, 1995—Michelson resubmitted her claim.

February 16, 1996—the undisputed portion of the claim was paid.

July 2, 1996—the disputed portion of the claim was denied.

December 19, 1996—the parties were accepted into mediation.

January 15, 1997—mediation was held, but was unsuccessful.

January 27, 1997—notice of termination of the mediation program.

July 29, 1997—the complaint was filed.

The parties concur that the one-year period of limitation was tolled during Mid-Century's consideration of Michelson's claim and also during the time the parties were engaged in the state-sponsored mediation program. The dispute here centers on when the one-year period commenced, and the appropriate number of days the limitation period was tolled.

Michelson takes the position that the one-year period started on July 2, 1996, the date Mid-Century denied the balance of her claim. She argues that the matter was tolled during mediation, commencing December 19, 1996, until January 27, 1997, which is 40 days. She concludes she therefore had from July 2, 1996, until August 11, 1997, in which to file her complaint. Since the complaint was filed on July 29, 1997, it was timely.

Mid-Century states that the starting point of the limitation period was the date of the earthquake, January 17, 1994. The period ran for 33 days, until the claim was made on February 19, 1994. The matter was then tolled until the final denial on July 2, 1996. The limitation period then ran until December 19, 1996, when it was tolled until January 15, 1997, and then commenced again.

In sum, Mid-Century asserts that 33 days elapsed by July 2, 1996. Absent any further tolling, the one-year period would end on May 30, 1997 (July 2, 1996, to July 2, 1997, minus 33 days). However, Mid-Century agrees Michelson gets credit for the tolling of 28 days between December 19, 1996 and January 15, 1997, making June 27, 1997, the ending date of the one-year period. The complaint was filed on July 29, 1997, which was too late.

We now turn to an examination of when the one-year period commenced, and the impact of any tolling.

b.   *Commencement of the One-year Period of Limitation*

The pertinent policy provision states that "Suit on or arising out of this policy must be brought within one year after the loss occurs."

The earthquake occurred on January 17, 1994. Citing Michelson's allegations in her complaint, Mid-Century argued in its motion for summary judgment that such date commenced the start of the one-year period in which to file suit. In her response to the motion, Michelson agreed in her statement of undisputed facts that "Plaintiff's earthquake loss occurred January 17, 1994."

Michelson now contends that Mid-Century offered no evidence to support the proposition that January 17, 1994, was the starting date of the loss, thus creating a triable question of fact on that issue. We disagree.

As the moving party, it was Mid-Century's burden to show that it had a complete defense to Michelson's action. (Code Civ. Proc., § 437, subd. (o)(2).) Part of that defense hinged on when the loss occurred. In its motion, Mid-Century cited paragraph 9 of the complaint (and the first amended complaint) as an admission by Michelson as to the date of loss. In her response to Mid-Century's statement of undisputed facts, Michelson agreed that January 17, 1994, was the starting date for her loss. Michelson cannot now renege and make the unsupported claim that there might be an issue as to exactly when she discovered all elements of the loss. (*North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 28-32

[21 Cal.Rptr.2d 104]; *Waisbren v. Peppercorn Productions, Inc.* (1995) 41 Cal.App.4th 246, 263 [48 Cal.Rptr.2d 437].)

Accordingly, the one-year period of limitation under the contract of insurance commenced on January 17, 1994.

### c. *Tolling*

The issues regarding tolling involve two separate periods of time. The first is tolling that occurred while Mid-Century was investigating the claim, up to the date it made a final decision. The second involves the time during which the parties were in mediation.

### (1) *Investigation of the Claim*

At the trial court, Mid-Century conceded that the one-year period was tolled from the time Michelson made a claim (February 19, 1994) until final denial on July 2, 1995. The time-line proposed by Mid-Century was:

| Date | Event | Total Time Lapse |
|---|---|---|
| 1. January 17, 1994 | (earthquake) | |
| 2. February 19, 1994 | (the claim) | 33 days |
| 3. July 2, 1996 | (the denial) | 33 days |
| 4. December 18, 1996 | (acceptance into mediation) | 203 days |
| 5. January 15, 1997 | (mediation) | 203 days |
| 6. July 29, 1997 | (complaint filed) | 404 days |

At the trial court, Mid-Century did not argue that the elapsed time between the February 19, 1994, claim and the submission of a further claim on May 3, 1995, should count in the one-year limitation period.

On appeal, however, Mid-Century makes the assertion that the 448 days that expired from February 19, 1994, to May 3, 1995, should now count against Michelson. For the same reasons in part 2.b., *ante*, that we have disallowed Michelson's attempt to change her theory on appeal, we similarly reject Mid-Century's change of position relative to the tolling credits that should be afforded to Michelson. Instead, Mid-Century will have to live with what it argued to the trial court; to wit, that tolling due to investigation lasted from February 19, 1994, until July 2, 1996.[4] Therefore, the elapsed time on the one-year statute up to July 2, 1996, was the 33 days from January 17, 1994, to February 19, 1994 (hereafter 33 days).

---

[4]In the moving papers on the motion for summary judgment, Mid-Century argued that the period of limitations ran from March 16, 1994 (the date of denial) to May 3, 1995, the date of submission of a new claim. However, in its reply to Michelson's opposition to the motion, Mid-Century stated that the time lapse from the date of the earthquake (January 17, 1994) to the date of final denial was 33 days.

### (2)  *Tolling During Mediation*

Insurance Code section 10089.70 et seq. was enacted to provide a mediation program to insurers and insureds to assist in resolving disputes arising from the 1994 Northridge earthquake. If parties avail themselves of this program, Insurance Code section 10089.82, subdivision (e)[5] provides in pertinent part: "Any applicable statute of limitations is tolled for the number of days beginning from the referral to mediation until the date on which the mediation is either completed or declined, or the date on which the insured fails to appear for a scheduled mediation for a second time, or in the event that a settlement is completed, the expiration of any applicable three business day cooling off period."

The parties agree that tolling commenced on the day of December 19, 1996. The contested issue is when tolling ended. Resolution of that issue depends on whether mediation is deemed "completed" on the day of the meeting (January 15, 1997) or the day the Department of Insurance sent written notice to the parties (January 27, 1997).

Mid-Century argues that the ending date for tolling was January 15, 1997, for a total of 28 days tolling credit.

Michelson contends that tolling ended on January 27, 1997, the date the Department of Insurance sent the parties notice that the program was terminated as to them. She contends she is entitled to a credit for 40 days of tolling.

We first note that in view of our holding that the date of loss commenced on January 17, 1994, and ran for 33 days until investigatory tolling started on February 19, 1994, any issue as to tolling for mediation is moot. The reason is, at best, appellant would only receive 40 days credit for tolling during mediation, but would lose 33 days. When the net credit of seven days is added to July 2, 1996 (which the parties agree is the date on which investigatory tolling was ended), Michelson was required to file her complaint one year from July 9, 1996, and did not do so. However, since the tolling issue under section 10089.82 is one of first impression, we will complete the analysis.

■■■ Michelson's position is founded on the concept that mediation is a "process" rather than a one-time event, and the possibility therefore existed

---

[5]All further statutory references are to the Insurance Code.

after the unsuccessful January 15 meeting that the parties might have engaged in further mediation. We again disagree.

█ In a situation involving statutory interpretation, it is our function to make an independent review of the statute and attempt to ascertain the overall legislative intent. In doing so, we will first look to the words of the statute, giving the words their ordinary meaning, and attempting to construe them in light of the legislative purpose. (*People v. Turner* (1993) 15 Cal.App.4th 1690, 1696 [19 Cal.Rptr.2d 736]; *People v. Martinsen* (1987) 193 Cal.App.3d 843, 848 [238 Cal.Rptr. 530].)

█ In the present matter, the language is not difficult or ambiguous. The overall goal of the mediation program has already been stated. In order to encourage use of the program, any periods for limitation of civil actions are tolled during such participation. As previously stated, the salient provision is section 10089.82, subdivision (e), which provides that tolling commences on entry into the mediation program and ends on one of three circumstances:

1. The date on which the mediation is completed or declined.

2. The date on which the insured fails to attend the mediation for the second time.

3. If settlement was reached, three business days later.

In none of those circumstances is it required that notification be given by the Department of Insurance. If the Legislature had wished to make such notice mandatory, it could have easily said so. In fact, section 10089.70 et seq. is replete with provisions directing the Department of Insurance and the mediator to give a variety of premediation notices to the insured and the insurer. However, nothing in the statutes require that either the mediator or the Department of Insurance give any written notice that the program is completed as to any particular parties.

The fact that the Department of Insurance may or may not send out a courtesy letter to the parties is of no consequence. Under the plain language of the statute, if an insured fails to show up a second time, tolling is over on *that date.* If a settlement is reached, tolling stops *three business days* after settlement is reached. In neither of those instances is there any basis to argue *that a formal written pronouncement is necessary.* Rather, the clear wording of the statute provides that tolling ends either on the date an insured fails to show up a second time, or three business days after settlement.

If no written notice is needed to end tolling due to failure to attend or for a settlement, it is difficult to advance any rationale why one should be necessary after a mediation has been completed (but has not resulted in a settlement). If the parties wished to have further meetings, or did not make a definite final decision at the time of the mediation, the mediation would not be "completed," and tolling would not end. Any dispute between the parties on the subject might likely result in a triable question of fact.

In the present matter, Michelson does not claim there was any contemplation by either party that further mediation would ensue. Instead, the mediation held on January 15, 1997, was unsuccessful in resolving the parties' differences. There is no hint either in the record or in the appellate briefs that Michelson or Mid-Century wished to avail themselves further of the program. Therefore, there is no factual dispute but that the parties considered the unsuccessful January 15 meeting to be the end of the road as to mediation.

Accordingly, mediation was complete on January 15, 1997, and tolling ended on that date. Ergo, Michelson receives 28 days' credit during mediation. As previously explained, that amount of credit does not save the filing of the complaint from being tardy.

DISPOSITION

The judgment is affirmed.

Boren, P. J., and Cooper, J., concurred.